THE UNION PACIFIC RAILWAY COMPANY v. ADELINE CAPPIER.

No. 13,073. (72 Pac. 281.)

SYLLABUS BY THE COURT.

1. RAILROADS——*Injury to Trespasser—Duty of Employees.* A trespasser on a railway-track was struck by a moving car to which an engine was attached, and injured without fault on the part of the servants of the company. *Held*, that the failure of the railway employees operating the car and engine to take charge of the wounded man and give him care and attention was not the violation of a legal duty for which the company was liable.

2. —————— *Case Distinguished.* The case at bar is distinguishable from those where the servants of the railway company were at fault, and also from those where the injury was occasioned without fault, and the negligent acts or omissions occurred after the company had taken the injured person in charge.

Error from Wyandotte district court; E. L. FISCHER, judge. Opinion filed April 11, 1903. Reversed.

*N. H. Loomis, R. W. Blair,* and *H. A. Scandrett,* for plaintiff in error.

*C. W. Trickett,* for defendant in error.

The opinion of the court was delivered by

SMITH, J. : This was an action brought by Adeline Cappier, the mother of Irvin Ezelle, to recover damages resulting to her by reason of the loss of her son,

who was run over by a car of plaintiff in error, and died from the injuries received. The trial court, at the close of the evidence introduced to support a recovery by plaintiff below, held that no careless act of the railway company's servants in the operation of the car was shown, and refused to permit the case to be considered by the jury on the allegations and attempted proof of such negligence. The petition, however, contained an averment that the injured person had one leg and an arm cut off by the car-wheels, and that the servants of the railway company failed to call a surgeon, or to render him any assistance after the accident, but permitted him to remain by the side of the tracks and bleed to death. Under this charge of negligence a recovery was had.

While attempting to cross the railway-tracks Ezelle was struck by a moving freight-car pushed by an engine. A yardmaster in charge of the switching operations was riding on the end of the car nearest to the deceased and gave warning by shouting to him. The warning was either too late or no heed was given to it. The engine was stopped. After the injured man was clear of the track, the yardmaster signaled the engineer to move ahead, fearing, as he testified, that a passenger-train then about due would come upon them. The locomotive and car went forward over a bridge, where the general yardmaster was informed of the accident and an ambulance was summoned by telephone. The yardmaster then went back where the injured man was lying and found three Union Pacific switchmen binding up the wounded limbs and doing what they could to stop the flow of blood. The ambulance arrived about thirty minutes later and Ezelle was taken to a hospital, where he died a few hours afterward.

In answer to particular questions of fact, the jury found that the accident occurred at 5 : 35 P. M. ; that immediately one of the railway employees telephoned to police headquarters for help for the injured man ; that the ambulance started at 6 : 05 P. M. and reached the nearest hospital with Ezelle at 6 : 20 P. M., where he received proper medical and surgical treatment. Judgment against the railway company was based on the following question and answer :

"Ques. Did not defendant's employees bind up Ezelle's wounds and try to stop the flow of blood as soon as they could after the accident happened? Ans. No."

The lack of diligence in the respect stated was intended, no doubt, to apply to the yardmaster, engineer and fireman in charge of the car and engine.

These facts bring us to a consideration of the legal duty of these employees toward the injured man after his condition became known. Counsel for defendant in error quotes the language found in Beach on Contributory Negligence, third edition, section 215, as follows :

"Under certain circumstances, the railroad may owe a duty to a trespasser after the injury. When a trespasser has been run down, it is the plain duty of the railway company to render whatever service is possible to mitigate the severity of the injury. The train that has occasioned the harm must be stopped, and the injured person looked after ; and, when it seems necessary, removed to a place of safety, and carefully nursed, until other relief can be brought to the disabled person."

The principal authority cited in support of this doctrine is *Northern Central Railway Co. v. The State, use of Price et al.*, 29 Md. 420, 96 Am. Dec. 545. The court in that case first held that there was evidence

enough to justify the jury in finding that the operatives of the train were negligent in running it too fast over a road-crossing without sounding the whistle, and that the number of brakemen was insufficient to check its speed. Such negligence was held sufficient to uphold the verdict and would seem to be all that was necessary to be said. The court, however, proceeded to state that, from whatever cause the collision occurred, it was the duty of the servants of the company, when the man was found on the pilot of the engine in a helpless and insensible condition, to remove him, and to do it with proper regard to his safety and the laws of humanity. In that case the injured person was taken in charge by the servants of the railway company and, being apparently dead, without notice to his family, or sending for a physician to ascertain his condition, he was moved to defendant's warehouse, laid on a plank and locked up for the night. The next morning, when the warehouse was opened, it was found that during the night the man had revived from his stunned condition and moved some paces from the spot where he had been laid, and was found in a stooping posture, dead but still warm, having died from hemorrhage of the arteries of one leg, which was crushed at and above the knee. It had been proposed to place him in the defendant's station-house, which was a comfortable building, but the telegraph operator objected, and directed him to be taken into the warehouse, a place used for the deposit of old barrels and other rubbish.

The Maryland case does not support what is so broadly stated in Beach on Contributory Negligence. It is cited by Judge Cooley, in his work on Torts, in a note to a chapter devoted to the negligence of bailees (ch. XX), indicating that the learned author under-

stood the reasoning of the decision to apply where the duty began after the railway employees had taken charge of the injured person.

After the trespasser on the track of a railway company has been injured in collision with a train, and the servants of the company have assumed to take charge of him, the duty arises to exercise such care in his treatment as the circumstances will allow. We are unable, however, to approve the doctrine that when the acts of a trespasser himself result in his injury, where his own negligent conduct is alone the cause, those in charge of the instrument which inflicted the hurt, being innocent of wrong-doing, are nevertheless blamable in law if they neglect to administer to the sufferings of him whose wounds we might say were self-imposed. With the humane side of the question courts are not concerned. It is the omission or negligent discharge of legal duties only which come within the sphere of judicial cognizance. For withholding relief from the suffering, for failure to respond to the calls of worthy charity, or for faltering in the bestowment of brotherly love on the unfortunate, penalties are found not in the laws of men but in that higher law, the violation of which is condemned by the voice of conscience, whose sentence of punishment for the recreant act is swift and sure. In the law of contracts it is now well understood that a promise founded on a moral obligation will not be enforced in the courts. Bishop states that some of the older authorities recognize a moral obligation as valid, and says:

"Such a doctrine, carried to its legitimate results, would release the tribunals from the duty to administer the law of the land; and put, in the place of law, the varying ideas of morals which the changing in-

cumbents of the bench might from time to time en-
tertain.'' (Bish. Cont. § 44.)

Ezelle's injuries were inflicted, as the court below
held, without the fault of the yardmaster, engineer or
fireman in charge of the car and locomotive. The
railway company was no more responsible than it
would have been had the deceased been run down by
the cars of another railroad company on a track paral-
lel with that of plaintiff in error. If no duty was im-
posed on the servants of defendant below to take
charge of, and care for, the wounded man in such a
case, how could a duty arise under the circumstances
of the case at bar ?   In Barrows on Negligence, page
4, it is said :

"The duty must be owing from the defendant to
the plaintiff, otherwise there can be no negligence, so
far as the plaintiff is concerned ;  .   .   .   and the
duty must be owing to plaintiff in an individual capa-
city, and not merely as one of the general public.

"This excludes from actionable negligence all fail-
ures to observe the obligations imposed by charity,
gratitude, generosity, and the kindred virtues.   The
moral law would obligate an attempt to rescue a per-
son in a perilous position,— as a drowning child,— but
the law of the land does not require it, no matter how
little personal risk it might involve, provided that the
person who declines to act is not responsible for the
peril.''    (See, also, *Kenney v. The Hannibal & St.
Joseph Railroad Company*, 70 Mo. 252, 257.)

In the several cases cited in the brief of counsel for
defendant in error to sustain the judgment of the trial
court it will be found that the negligence on which
recoveries were based occurred after the time when
the person injured was in the custody and care of
those who were at fault in failing to give him proper
treatment.

The judgment of the court below will be reversed, with directions to enter judgment on the findings of the jury in favor of the railway company.

All the Justices concurring.