CLARA RAASCH v. ELITE LAUNDRY COMPANY and Another.[1]

June 22, 1906.

Nos. 14,768—(139).

**Master and Servant—Question for Jury.**

An employee, while operating an ironing mangle in a laundry, had her fingers caught between the rollers, and the master, having been notified of the situation, started the machine, thereby drawing her hand farther in and greatly increasing the injury.

*Held*, the master, after notice of the situation, was required to exercise ordinary care to release employee and alleviate her suffering, and whether he did so under the circumstances was a question for the jury.

**Contributory Negligence.**

The fact that the employee contributed to the injury by her own negligence in assuming the risks of operating the machine, and that the master was not responsible for the injury occasioned in the first instance, does not change the application of the rule.

Action in the district court for Ramsey county to recover $10,000 for personal injuries. The case was tried before Brill, J., and a jury,

[1]Reported in 108 N. W. 477.

which rendered a verdict in favor of plaintiff for $8,500. From an order denying a motion for judgment notwithstanding the verdict, but granting a motion for a new trial, defendants appealed. Affirmed.

*Daniel W. Lawler* and *Frank M. Nye,* for appellants.

*How, Butler & Mitchell,* for respondent.

LEWIS, J.

Appellant company had in use in its laundry an ironing mangle of ordinary pattern, which was heated and operated by steam, and consisted of a steel cylinder about four feet in diameter, and a series of felt rolls about six inches in diameter, with a number of other rolls, pulleys, aprons, etc. Close to the cylinder was located a small roller, called the "whipper," and its purpose was to separate the articles and fabrics from the surface of the cylinder and cause them to pass, by means of aprons and other appliances, to a delivery platform on the other side of the mangle. It was respondent's duty to feed articles into the machine, and she was assisted by Leone Waldock, who stood upon the platform to the left of the feeder, and operated the lever under respondent's direction, and applied the power and stopped it upon signals by her. It sometimes happened, while feeding fabrics into the mangle, that they would wind around the whipper; and on the occasion of this accident a couple of sheets wound around it. The machine was stopped by Leone for the purpose of unwinding the articles, and, while respondent was in the act of doing so, Leone, without the usual signal, started the machine, thereby catching the tips of the fingers of respondent's right hand between the cylinder and whipper. Respondent cried out, and the machine was immediately stopped, but she could not extricate her fingers, and Mr. Carter, president and manager of appellant company, was notified and came over to respondent, and for some reason took hold of the lever and started the mangle sufficiently to draw respondent's hand at least four or five inches farther between the rollers and bring it in contact with the heated cylinder. Respondent again cried out, and the machine was stopped, but before her hand was released serious damage resulted, and this action was based upon the following acts of negligence: That the machine was of a complex construction, difficult of operation, and inherently defective; that necessary tools were not provided for its adjustment; incompetency of as-

sistant, and failure to properly instruct her; and also that, after being notified that respondent's hand was caught between the rollers, appellants negligently started the machine in motion, thereby drawing respondent's hand in still farther between the rollers and causing additional injury.

The trial resulted in a verdict of $8,500 for respondent, whereupon appellants made an alternative motion for judgment in their favor notwithstanding the verdict, or for a new trial. The motion for judgment notwithstanding the verdict was denied, and a new trial granted, upon the ground that the verdict was excessive and not justified by the evidence, and upon the further ground that the court had committed error in not giving certain requests in respect to appellants' negligence in starting the machine.

The trial court was of opinion that there was no evidence indicating negligence on the part of appellants except the act of Mr. Carter in starting the mangle after he had been notified that respondent's fingers were caught, and submitted to the jury for their determination whether appellants were in the exercise of ordinary care when Mr. Carter so manipulated the machine as to increase her injuries. The evidence tends to support respondent's claim that after Mr. Carter was notified her fingers were caught in the mangle he came over, took hold of the lever and started the machine, but there is no evidence to support the suggestion that it was done with any wilful purpose to injure her. It is evident that if he had not touched the lever and started the mangle, but had resorted to means at his command for loosening the whipper, respondent's hand might have been released with comparatively slight injury. The act of starting the mangle without pausing to investigate the extent to which respondent's hand was caught, and without endeavoring to release it by unfastening the set screw, or by some other method, is difficult of comprehension. Mr. Carter denied that he did move the lever, but the evidence to the contrary is strong, and at least that question was for the jury, but he says that if he did take hold of the lever and move the machine, it was for the purpose of testing it to see if the motive power was entirely turned off, and if injury resulted it was because of mistake in judgment on his part.

We are asked by appellants to rule that, under the circumstances presented by this case, it appears, as a matter of law, that Mr. Carter

was placed in an emergency, and there being no evidence to indicate that he was actuated by any wilful purpose against respondent, appellants must be exonerated. In our judgment, the record does not conclusively show that the act of Mr. Carter in starting the machine is to be accounted for solely upon the ground of mistake of judgment. His explanation of why he started the mangle, if he did so, indicates lamentable ignorance on his part of the possible consequences, or extraordinary recklessness, unless he was greatly excited and made a mistake. Mr. Carter was required to use ordinary care to prevent further injury to respondent after discovering that her hand was caught in the mangle, and whether he did use ordinary care depended upon his knowledge and means of acquiring knowledge of the details of the business. This involved the mechanism of the machine, the different ways in which respondent's hand might have been released, the fact that it had been customary to keep tools in the near vicinity for the very purpose of adjusting the machine, the fact that the safe way to unwind a wrapper was to loosen the set screw and so release it, and the fact that, at the time Mr. Carter was called, the mangle was at rest; all of which have a bearing upon his conduct, and if, in the opinion of the jury, he failed to exercise the care which an ordinarily prudent superintendent would have done, then he and the company were responsible for his act. On the contrary, if the jury were of opinion that, in view of all the facts, Mr. Carter did what he believed to be the proper thing, and that the accident occurred as a result of a mistake, or error in judgment such as ordinary prudence could not have foreseen, then no responsibility followed.

In the case of Allen v. Hixson, 111 Ga. 460, 36 S. E. 810, a young woman operating a laundry mangle discovered that the rollers were out of adjustment and notified the superintendent thereof, and in order to show him the real condition, took hold of the unwrapped end of the cloth to raise it and allow an inspection of the rollers, and, by reason of some hidden defect in some part of the machine, a sudden and violent jolt caused a revolution of the rollers instantly drawing her hand between them. As one of the grounds for damages in an action by her against the company, it was claimed that the agents of the company unnecessarily and negligently delayed releasing plaintiff's hand, and that by reason thereof she received additional injuries, with reference

to which the court said: "When an employee, without fault on the master's part, becomes placed in a dangerous or painful situation, the master is under no positive legal duty of exercising all reasonable care and diligence to effect such employee's speedy release. Being in no way responsible for the unfortunate occurrence, the master cannot be said to·be guilty of a tort if he does not promptly take active steps in coming to the rescue. The only duty arising under such circumstances is one of humanity, and for a breach thereof the law does not, so far as we are informed, impose any liability." This case is relied upon as authority for the proposition that if appellants were not guilty of any of the acts charged prior to starting the machine, then no new legal duty arose, and Mr. Carter was a mere stranger in what he did, and the company was not bound by his act. We consider this case unsound in principle and contrary to the great weight of authority.

A similar case, also relied upon by appellants, is that of Stager v. Troy, 38 Ore. 480, 63 Pac. 645, 53 L. R. A. 459. There a new trial was ordered by the appellate court upon the ground that the trial court had given an erroneous instruction to the effect that, even if plaintiff was at fault and brought the mischief upon herself, she.was nevertheless entitled to recover if defendant failed to do any act which would minimize her injury. The court was of opinion that, under the facts, it appeared that defendant did all it reasonably could to extricate plaintiff as quickly as possible, and could not be held for damages upon that ground. In that instance, the machine was a new one and had been in operation only twelve days before the accident, and the only knowledge defendant's manager had obtained was from seeing it set up by the agent, and from seeing one of the same make operated for a short time in another city. Upon the trial it was admitted by the manager that if he had better understood the machine and had known how to quickly unloosen the roller, the injury need not have been so great, and because of their ignorance they had to get a crowbar and pry the roller up before she could be released. The court was undoubtedly correct in ordering a new trial on the ground that the instruction was erroneous, but we cannot agree that the facts stated warranted the court in concluding, as a matter of law, that the company's representatives had done' all they reasonably could, and that it conclusively appeared from those facts that they were not liable by reason of the delay.

We cannot accept as sound the proposition that a master may set up a dangerous machine, put untrained and ignorant employees at work upon it without giving them proper instructions, and when injury occurs, even on account of their own negligence, be excused upon the ground that he did not understand the machine and did not know how to effect a release of the injured one in the quickest possible manner. We believe the true rule to be that the master is required to take reasonable measures to understand his machinery, know how it operates, and to anticipate possible injury to his employees and provide the necessary means for controlling and taking it apart in cases of emergency, and in the Oregon case, the fact that no such knowledge was ascertained, that no reasonable precautions had been taken, nor necessary tools provided, were proper elements to be taken into account in determining whether, under the circumstances, after discovery of injury, the master used ordinary care in effecting a release.

We are referred by appellants to Union v. Cappier, 66 Kan. 649, 72 Pac. 281, 69 L. R. A. 513, and to the note of the editor, where it is claimed the proper rule applicable to such cases is stated: "Feelings of kindliness and sympathy may move the good Samaritan to minister to the needs of the sick and wounded at the roadside, but the law imposes no such obligation, and suffering humanity has no legal complaint. * * * Unless, therefore, the relation existing between the sick, helpless, or injured, and those who witness their distress, is such that the law imposes the duty of providing the necessary relief, there is neither obligation to minister on the one hand, nor cause for legal complaint on the other." In that case a trespasser upon the railway tracks was struck down by a moving freight car pushed by an engine, without any fault on the part of the company, and it was held that the failure of the railway employees operating the car and the engine to take charge of the wounded man and give him care and attention was not a violation of the legal duty for which the company was liable, and that the case was distinguished from those where the servants of the railroad company were at fault, and also from those where the injury was occasioned without fault, and the negligent acts or omissions occurred after the company had taken the injured person in charge. The company was charged with negligence in failing to take proper care of the injured person, on account of which he bled to death.

In the opinion an attempt was made to distinguish the case from Northern v. State, 29 Md. 420, 96 Am. Dec. 545, and to justify the latter decision upon the ground that, in that case, the railroad company's employees actually took possession of the injured man and locked him up in a warehouse, and that, having interfered and taken him in charge, the law raised an obligation on their part to see to it that he was properly cared for. This is untenable, and, as we understand the note to the decision, is not approved of by the editor, which seems apparent from the consideration of the cases given under the fifth division, at page 533 of 69 L. R. A., where the authorities are collected and reviewed.

The true doctrine in respect to such cases is applied in Northern v. State, supra, where the deceased was run over and injured by a train. After the train was stopped the injured man was found on the pilot of the engine in a helpless and apparently lifeless condition, and was removed and locked up in a warehouse at night by the employees of the railroad, and upon opening the warehouse in the morning the man was found to have regained consciousness during the night and to have afterwards died from hemorrhage of an artery severed by the collision. It was held, that from whatever cause the collision occurred it at once became the duty of the railway company's agents in charge of the train to remove the injured person with a proper regard to his safety and the laws of humanity, and if, in removing and locking him up, although he was apparently dead, negligence was committed whereby his death was caused, there was no principle of reason or of justice upon which the railroad company could be exonerated from responsibility.

Weitzman v. Nassau, 33 App. Div. 585, 53 N. Y. Supp. 905, is a similar case, where a child was struck by an electric car and thrown into the fender and carried a considerable distance, and rolled off and was killed by being crushed under the wheels. It was held that irrespective of whether the child was guilty of contributory negligence in the first instance, when he was thrown into the fender, of which the employees of the company had knowledge, the company became liable for any further injury which could have been prevented by the exercise of "reasonable care." The Alabama court has applied the same principle in Pannell v. Nashville, 97 Ala. 298, 12 South. 236, where

it was held that although the injured person was guilty of negligence·
in attempting to pass between two cars, the company were required·
to use reasonable care to release him and not cause further injury after
discovering his peril, stating the rule as follows: "It is a well-settled
principle that, when one person, whether natural or artificial, is about.
to be the means or instrument of doing an injury to another, that.
other's negligence contributing proximately to it, does not, per se, ·
exonerate the actor from all further effort; does not, per se, relieve
him from all responsibility for the consequences. Supine inaction, or
stolid indifference to consequences, the law does not tolerate. The
actor, no·matter how·free from fault, and no matter how negligent the·
one in peril may have been, must resort to every reasonable means and.
employ every reasonable agency to avert the catastrophe."

We perceive no vital distinction between cases where the master·
or his servant make no attempt to relieve the sufferings of an injured
person, as in Union v. Cappier, supra, and cases where such attempt.
is made but negligently performed, as in Northern v. State, supra, and
if there is any distinction between those cases where the master is in;
no way at fault prior to the accident and those where he was originally
negligent, a stricter rule as to subsequent conduct should apply in the·
latter class, although we do not place our decision on this distinction..
Those who employ methods or instrumentalities which are naturally
dangerous, and are liable to be the means of causing injury to the·
ignorant and unfortunate, should be required to take reasonable means
to alleviate the suffering occasioned by an accident, although up to that
time the master is under no legal duty to respond in damages. In this·
case the evidence tends to indicate that appellants were culpably negli--
gent in failing to instruct respondent and her assistant how to properly
loosen the whipper, and in failing to keep on hand a set of tools for that
purpose, and although there is evidence tending to show that re-
spondent assumed the risk of working with her assistant under those·
conditions, thereby relieving appellants from the consequences of their·
negligence, yet the duty remained with them to use all reasonable means
to provide their employees with reasonably safe surroundings and·
means of accomplishing their work, and take all reasonable means·
to prevent further injury, and alleviate the suffering of an injured.
employee in case of an accident.

The trial court, in laying down the test by which appellants were to be judged, stated that it was the duty of appellants, upon discovering that respondent's hand was caught in the rollers, to exercise reasonable care to release it, such care as men of ordinary prudence exercise under similar circumstances. And, further, in determining that question, the jury should consider the excitement, if any, attendant upon the situation, and of the circumstances in the case, and decide whether or not Mr. Carter was exercising reasonable care in releasing respondent's hand. As bearing upon the question of the degree of care, appellants requested the court to give the following instruction:

> If you find that the defendant Carter by mistake started the machine, and you believe that was a mistake which a person of ordinary care and caution would, under the circumstances of excitement attending the occasion, have done, or have been likely to do, then you should find it was not a failure on his part to exercise ordinary care, and no recovery on that account can be had.

The court was of opinion in granting the motion for a new trial that this request should have been given. In order to avoid possible confusion hereafter we may say that the request was proper as bearing upon the principal question, whether or not Mr. Carter was exercising that degree of care which prudent men would exercise under like circumstances. It necessarily follows that if the act which he performed was such an act as would have been performed by a person of ordinary care and caution under such circumstances, then it meets the test of ordinary care. A person is not liable for a mistake in judgment actuated by an emergency and under excitement, but whether or not that be the real explanation is only ascertained by the application of the usual test, viz., what would a prudent man do under similar circumstances? Bittner v. Crosstown, 153 N. Y. 76, 46 N. E. 1044, 60 Am. St. 588.

Order affirmed.