## EVANSVILLE AND SOUTHERN INDIANA TRACTION COMPANY *v.* JOHNSON.

[No. 7,366.   Filed January 26, 1912.   Rehearing denied May 17, 1912.   Transfer denied November 19, 1913.]

1. STREET RAILROADS.—*Injuries to Person on Track.—Complaint.—Sufficiency.*—A complaint in an action against a street car company, averring that the car was running at a high and dangerous rate of speed as it approached the crossing, was not insufficient, where, considering the averment with the further allegation that those in charge of the car made no effort to check or control its speed, the only inference is that the car was going at a dangerous speed when it collided with plaintiff upon the crossing.   p. 604.

2. STREET RAILROADS.—*Injuries to Person on Track.—Complaint.—Sufficiency.*—A complaint, in an action against a street car company for injuries sustained in a crossing accident, although failing to allege that no signals or warnings of the car's approach were given was not insufficient, where its allegations show that after plaintiff's danger became evident to those in charge of the car, they made no effort to check or control the speed or stop the car, but carelessly and negligently ran the same against plaintiff.   p. 604.

3. STREET RAILROADS.—*Injuries to Person on Track.—Evidence.—Negligence in Approaching Track.*—Where the evidence, in an action for injuries sustained by being struck by a street car, showed that it would have been impossible for plaintiff to have failed to see the approaching car, had he looked, he must be deemed to have been negligent in driving upon the track.   p. 606.

4. NEGLIGENCE.—*Contributory Negligence.—Last Clear Chance.*— Where a person, by lack of due care, exposes himself to danger and is injured, if the situation is such that the one in charge of the injury-producing agency has a chance, at some appreciable time before the injury, to avoid it, a special duty devolves upon him to do so, if by the exercise of reasonable care, it can be avoided, and, failing to discharge such duty, his negligence will be deemed to be the proximate cause of the injury, rendering him liable under the doctrine of last clear chance. p. 606.

5. NEGLIGENCE.—*Contributory Negligence.—Last Clear Chance.*— Where it appears that plaintiff negligently entered into a place of danger from which he could not, in the exercise of due care, extricate himself in time to avoid injury, and that defendant could have avoided such injury by the use of due care, but failed to do so, the negligence of plaintiff is deemed to have ceased at the time due care on his part became unavailing, and defendant will be held liable even though he did not actually know of plaintiff's danger, if by the exercise of due care he could have known. p. 607.

6. NEGLIGENCE.—*Contributory Negligence.—Last Clear Chance.*— Where a person negligently enters a place of danger, and there is nothing to prevent him from observing his danger and avoiding injury at any time before it occurs, and the one in charge of the injury-producing agency, through lack of due care, fails to see him in time to avoid the injury, the negligence of both is concurrent and no liability attaches. p. 608.

7. STREET RAILROADS.—*Injuries to Person on Track.—Last Clear Chance.*—Where it appears that a motorman actually saw a person who was injured and realized or should have realized the peril to which he was exposed, or was about to expose himself, in time to have prevented the injury, there may be a recovery under the doctrine of last clear chance notwithstanding the injured person's want of care in failing to discover the approach of the car continued up to the very instant of the injury, and notwithstanding he could have avoided the injury had he discovered his peril, since in such case a special duty to avoid injuring him arose as soon as the motorman saw him under circumstances that would indicate to a person of ordinary prudence that he was in danger of being injured, or was about to expose himself to such injury. p. 608.

8. STREET RAILROADS.—*Injuries to Person on Track.—Last Clear Chance.—Evidence.*—In an action for injuries to a person struck by a street car, evidence showing that plaintiff drove on the track without giving any indication of stopping and without seeing the car until a second before it struck him, at which time he began to back his team, together with the testimony of the

motorman on direct examination that he first saw plaintiff when twenty feet away, and, on cross-examination, when from fifty to ninety feet from the point where the accident occurred, and that at that time plaintiff's horses were upon the track adjoining the track on which the car was approaching, was reasonably susceptible to the inferences that the motorman saw plaintiff under circumstances indicating that he was in danger, or about to expose himself to danger, and that by the use of ordinary care such motorman could have avoided injuring him, and was therefore sufficient to support a verdict for plaintiff. p. 609.

9. APPEAL.—*Review.—Instructions.—Applicability.*—In an action for injuries sustained by being struck by a street car, where there was evidence tending to show that the motorman saw the plaintiff under such circumstances that he could have avoided injuring him by the exercise of due care, an instruction correctly stating the doctrine of last clear chance was properly given. p. 611.

10. STREET RAILROADS.—*Injuries to Person on Track.—Last Clear Chance.—Instructions.*—Where, in an action for injuries sustained by being struck by a street car, the court gave an instruction embracing the doctrine of last clear chance, it should have given a requested instruction correctly setting forth the state of facts to which the doctrine would not apply. p. 611.

11. APPEAL.—*Review.—Harmless Error.—Refusal of Instructions.*—Where, in a personal injury case, the court gave an instruction embracing the doctrine of last clear chance, error in refusing to give a requested instruction stating the facts to which such doctrine would not apply is not cause for reversal, where it appears from the jury's answers to interrogatories that the facts on which such instruction was based did not exist. p. 611.

12. JURY.—*Filling Panel.—Qualification of Jurors.—Struck Jury.*—Although neither §550 Burns 1908, §525 R. S. 1881, providing for trial by the regular petit jury in any cause in which a jury has been struck and less than eight of such struck jurors present themselves, nor the act of March 2, 1909 (Acts 1909 p. 103) applying to the filling of regular panels, makes provision for the filling of a struck or special jury where more than eight and less than twelve of the jurors are present, courts may call talesmen to fill struck juries, and the filling of such juries will be governed by the statute relating to the filling of regular panels, and, since under that statute jurors may not be summoned from the bystanders in the courtroom, such persons are not eligible to fill vacancies in a struck jury, and the overruling of a challenge for such cause is error. p. 612.

13. JURY.—*Challenge.—Waiver.*—A motion to set aside the panel should be made before challenges for cause, since by challenges to the polls any right to challenge the array is waived. p. 613.

14. APPEAL.—*Review.*—*Harmless Error.*—*Challenges to Jurors.*— Error in overruling challenges for cause is harmless, where it appears that appellant had unexhausted peremptory challenges sufficient to remove the jurors to whom his challenges for cause were overruled. p. 613.

From Vanderburgh Circuit Court; *C. A. DeBruler,* Judge.

Action by David Johnson against the Evansville and Southern Indiana Traction Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Woodfin D. Robinson* and *William E. Stilwell,* for appellant.

*Chas. W. Wittenbraker* and *James E. Ensle,* for appellee.

IBACH, P. J.—Appellee recovered judgment below for personal injuries occasioned by a wagon, which he was driving, having been struck at a street crossing by appellant's street car. Appellant claims that the complaint is not sufficient to state a cause of action, or to withstand demurrer, urging that it undertakes to charge appellant with negligence in running its car at a high and dangerous rate of speed, and in failing to give any signals or warnings of its approach, but the averment in the pleading, as to speed, is that the car was running at a high and dangerous rate of speed as it *approached* the crossing, and the only averment concerning the giving of warnings or signals is that appellee *heard* no warnings or signals as he approached the crossing. Appellant is correct in its contention that the complaint fails to allege that no signals or warnings of the car's approach were given. But we think that when the allegation, that the car was going at an unreasonable, dangerous, unlawful and negligent rate of speed approaching the crossing, is considered together with the further allegation that those in charge of the car made no effort to check or control its speed, the only inference is that it was going at a dangerous speed when appellee was struck. The complaint also avers further negligence on the part of appellant. It states facts showing that appellee, in the use

MAY TERM, 1913. 605

Evansville, etc., Traction Co. *v.* Johnson—54 Ind. App. 601.

of due care, having stopped and looked and listened for cars of defendant going in either direction, and having seen no car and heard no warning, proceeded to cross Second Avenue, "when the defendant, through its agents, servants and employes, carelessly, violently, unlawfully, and negligently hit said wagon with said car," and that the "danger of the plaintiff, team and wagon were in plain view and was evident to the defendant, its agents, servants and employes at the time, they made no effort to check the speed or stop the car or control the same, but carelessly and negligently ran said car upon said wagon, thereby causing" certain injuries to plaintiff. This is a clear charge of negligence in running the car into plaintiff's wagon, and after it was in a place of danger, and such an allegation sufficiently states actionable negligence, where the facts alleged show the dangerous situation. See *Indianapolis St. R. Co.* v. *Marschke* (1905), 166 Ind. 490, 77 N. E. 945; *Indianapolis St. R. Co.* v. *Seerley* (1904), 35 Ind. App. 467, 72 N. E. 169, 1034.

Appellant contends that there should have been judgment in its favor upon the answers to interrogatories, and that the evidence is not sufficient to sustain the verdict. We shall consider the sufficiency of the evidence as including both these contentions, the answers to interrogatories being if anything, slightly more favorable to appellee, than the evidence. Appellant insists that uncontradicted evidence shows that a man with good hearing and good eyesight was approaching a street crossing in the city of Evansville, traveling west upon Franklin Street, an east and west street, one hundred feet wide, crossing Second Avenue, a north and south street fifty-six feet wide, in the center of which were appellant's double tracks, that he was driving twenty feet north of the center of Franklin Street, that there was nothing in the streets between the curb lines to obstruct the view along each of them, that when he passed the curb line of Second Avenue he could necessarily have seen the car if he had looked, for a car could be seen four blocks away, that taking the highest

rate of speed given by any witness that the car was running, and the rate at which appellee was driving, a slow walk, it would be impossible for the car to reach the crossing as soon as appellee reached it unless the car was at a point where appellee could see it when he passed the east curb line of Second Avenue, that appellee admits that he saw the car just before it struck the wagon, and testifies that he did look twice to the north, and once to the south, after passing the curb line of Second Avenue, but that he saw no car and heard no signals, and that it was a dark night.    Appellant argues that it was not possible for appellee to fail to
3.    see the approaching car, if he looked, as he said he did.    We must agree with appellant that under the conditions disclosed by the evidence, a man of ordinary hearing and eyesight could have seen the car if he had looked for it, and therefore, appellee is chargeable with what he could have seen, and was negligent in driving across the street as he did, in such a manner as to get into a place of danger on the track.    However, it does not follow from this, that appellee's negligence contributed to his injury, if this be a case to which the doctrine of last clear chance applies.

Appellant strongly argues that the doctrine of last clear chance does not apply to the circumstances of the case at bar.    We shall not enter into any extended discussion of that doctrine, for in the recent case of *Indianapolis Traction, etc., Co.* v. *Croly* (1913), *ante* 566, 96 N. E. 973, 98 N. E. 1091, it was very fully discussed, and the present case will be decided in the light of the principles there laid down, and to that case we refer for complete discussion.    Where
4.    the doctrine of last clear chance applies, though the person injured was negligent, his negligence is not in a legal sense contributory to his injury.    In such cases the injury is caused proximately by the failure of the defendant to use the last clear chance to avoid it, and the negligence of the plaintiff is only a remote cause.    A defendant is therefore liable to a person who, by lack of due care, has exposed

himself to danger and is injured by the defendant, if the situation is such that the defendant, at some appreciable time before the injury has a chance to avoid it, for having discovered the plaintiff in a place of danger, he owes to him a special duty to prevent his injury, if with reasonable care he can do so. Quoting from the opinion in the case of *Indianapolis Traction, etc., Co.* v. *Croly, supra,* "The doctrine of last clear chance applies to cases only where the defendant's opportunity of preventing the injury by the exercise of due care, was later in point of time than that of the plaintiff. This is a rule of universal application, and it affords the test of the applicability of the doctrine to a particular case. As a sort of corollary to this rule, the courts have stated as a general proposition that, where the person injured has negligently exposed himself to the injury, he can not recover on account of the negligence of the defendant by an application of the doctrine of last clear chance, unless it appears that the defendant's negligence intervened or continued after the negligence of the plaintiff had ceased. * * * The proposition stated in the corollary will serve as a general rule for the application of the doctrine, but it is not a proposition of universal application. There is at least one class of cases in which it has been held that an injured person may recover by the application of the doctrine of last clear chance, notwithstanding his own negligence continues up to the very time of the injury."

In the application of the rules announced, three classes of cases are recognized. The general proposition applies to those cases in which the plaintiff has negligently entered into such a place of danger that by the use of due care he cannot extricate himself therefrom in time to avoid injury, but the defendant could have prevented the injury by use of due care and failed to do so. In such a case, the plaintiff's negligence is deemed to cease when he reaches such a point that due care on his part would be unavailing, and the defendant is liable, whether he actually

knew of plaintiff's danger, or could have known in the exercise of due care.  Another class of cases is that in

6. which the plaintiff negligently enters a place of danger, where there is nothing to prevent him from observing his danger and avoiding injury at any time before it occurs, and the defendant by failure to use due care does not see him in time to avoid the injury.  Here both being negligent up to the time of the injury, and neither having the last clear chance to prevent it, the defendant is not liable. But, again quoting from *Indianapolis Traction, etc., Co.* v. *Croly, supra,* ''The proposition stated in the corollary has no application to that class of cases in which it appears that the motorman actually saw the person injured and realized or should have realized the peril to which he was exposed, or was about to expose himself, in time to have prevented the injury.  In such a case the special duty toward the particular person arises as soon as the motorman sees him under such conditions as would indicate to a person of or-

7. dinary prudence that he was in danger of being injured by the car, or was about to expose himself to such injury.  It then becomes the special duty of the motorman to use every reasonable means to avoid injuring him; and if he does not do so the injured may recover, notwithstanding his want of care in failing to discover the approach of the car continued up to the very instant of the injury, and notwithstanding also that the plaintiff possessed the physical ability to have avoided the injury, in case he had discovered his peril at any time before the accident happened.  \* \* \* Under such a state of facts the motorman possesses the physical ability to avoid the injury before the accident, and so also has the injured party.  In this respect their chances are equal, but the motorman actually possesses the knowledge of the danger and appreciates the necessity of taking steps to avoid the injury, while the person injured has no actual knowledge of his danger, and does not appreciate the necessity of taking steps to avoid it.''

We must next determine whether the facts shown by the evidence in the present case would bring it within any of the classes above. Appellee and another witness testify

8. that the horses were at one time on the track, across one rail, and that appellee was attempting to back them off when struck. The car struck the end of the wagon tongue, which broke in the motorman's vestibule door, and broke a handle on the side of the car. The tongue could not have projected far over the track when it was struck, for it does not appear that the horses were struck by the car, and from the height from the ground at which the tongue and car struck, it would seem that the tongue was raised, as in the act of backing. Before passing the curb line of Second Avenue, an approaching car could have been seen but a very few feet north of the crossing. Appellee testifies that he looked to the north after passing the curb line of Second Avenue, looked to the south, and again to the north when on the east track, but that he saw no car until a second before it struck the wagon. The tracks are four feet eight inches apart, and the west rail of the east track is four feet eight inches from the east rail of the west track. The motorman's testimony as to where he was when he first saw appellee, and as to appellee's situation at that time, is contradictory. On direct examination, he says he was twenty feet from appellee when he first saw him, and that appellee's horses' heads were "mighty near on the track." On cross-examination, he stated that at the time he first saw appellee his car was north of the crossing of Franklin Street, two-thirds of the way from the alley to the crossing, almost to the crossing, and this location of his position would make him from fifty to ninety feet from the point where, by the great preponderance of evidence, the accident occurred. He also says upon cross-examination that he first saw appellee when the horses were upon the outgoing east track, and that their noses were at least twelve feet from

the track upon which his car was running. This is manifestly impossible, for the east rail of the east track is only about nine feet from the west track.

We scarcely think that the state of facts most favorable to appellee which could be deduced from the evidence in the case at bar would bring it within the first class mentioned above, for it seems that by the time plaintiff drove into such a situation that it was impossible for him to avoid injury, it was likewise too late for the motorman to have done so. But we believe that facts may be inferred from the evidence which would bring the case under the third class. It was the jury's province to believe such portions of the motorman's openly contradictory testimony as it saw fit. It may have believed that he saw plaintiff when fifty to ninety feet away from him, and that when he first saw him, his horses were very near to the track. If the motorman saw plaintiff under such conditions as would indicate to a person of reasonable intelligence and prudence that he was in danger from the car, or was about to expose himself to such danger, it was his duty to use every reasonable means to prevent injuring plaintiff. The evidence shows that plaintiff drove on the track without giving any indications of stopping, and did not see the car until a second before it struck him, at which time he began to back his team, and was therefore, at the instant of the injury, not negligent. It was for the jury to find whether the circumstances under which he was seen by the motorman were such that they should indicate to the motorman that he was in danger or about to expose himself to danger, and whether, after seeing plaintiff in such circumstances, if he did so see him, the motorman by the use of ordinary care could have avoided injuring him. The case is close, but the evidence is such that we cannot say that reasonable men would not draw therefrom inferences of the existence of such a state of facts as to make defendant liable for plaintiff's injuries, especially since such

inferences have been drawn by twelve jurors, who were well instructed as to the law of the case.

Objection was made to instruction No. 5 given at appellee's request, because it applied the doctrine of last clear chance to the case. This instruction is a substantially correct statement of the doctrine, and as we have seen, is applicable to the evidence, and also to the issues. Error is also assigned in the refusal to give instruction No. 8 at appellant's request, which would have told the jury that, if it found from the evidence certain facts to exist, among them that the car was being run at no greater rate of speed than from four to six miles an hour, that as it approached the place where the accident occurred the gong was sounded, and that as soon as the motorman saw the plaintiff was driving into a place of danger, he did all in his power to stop the car, but on account of the close proximity of plaintiff, was unable to stop it before it struck plaintiff's wagon, then its verdict should be for the defendant. This instruction also enumerated certain other facts, and as a whole was a fairly correct statement of the law, and since the court gave one instruction embracing the doctrine of last clear chance, it should have instructed the jury upon the state of facts to which that doctrine would not apply. But by its answers to interrogatories the jury found that the car was running at about twenty miles an hour, and that the gong was not sounded as the car approached the crossing, also that the motorman could, after he saw the plaintiff's proximity to the tracks, by the exercise of reasonable care and caution have stopped the car so as to avoid the collision. Where answers to interrogatories show that an instruction refused is based on facts which the jury found did not exist, the refusal to give such instruction is harmless. *Indianapolis St. R. Co.* v. *Brown* (1903), 32 Ind. App. 130, 69 N. E. 407; *Chicago, etc., R. Co.* v. *Linn* (1902), 30 Ind. App.

88, 65 N. E. 552; *Muncie Pulp Co.* v. *Hacker* (1905), 37 Ind. App. 194, 76 N. E. 740; *Nichols* v. *Central Trust Co.* (1908), 43 Ind. App. 64, 86 N. E. 878; *Keller* v. *Reynolds* (1894), 12 Ind. App. 383, 40 N. E. 76, 280; *Baltimore, etc., R. Co.* v. *Harbin* (1902), 160 Ind. 441, 67 N. E. 109; *Roush* v. *Roush* (1899), 154 Ind. 562, 55 N. E. 1017.

A jury was struck for the trial of this cause, but on the date of trial only nine of the struck jurors appeared, and to complete the jury three were summoned from among the bystanders. When the jurors were sworn to answer questions, the defendant moved the court to excuse these three men for the reason that they were bystanders in the court room and the sheriff did not go outside the courthouse to summon reliable and reputable citizens for such jury service. The motion was overruled, the defendant challenged each of the said jurors for the reason aforesaid, and the court refused to require them to stand aside, and announced to defendant that if it wished to challenge any or all of the three jurors for any cause, except merely the fact that they were called from the bystanders, the court would send a venire and obtain jurors outside the courthouse, and thereupon the defendant moved the court to set aside and discharge from service the entire panel, which motion the court overruled. Error is assigned in the overruling of defendant's objections to the jurors. The statute, §550 Burns 1908, §525 R. S. 1881, providing for trial by a struck jury provides that when less than eight of the struck jurors are present at the time set for trial, the case shall be tried by the regular petit jury. If more than eight and fewer than twelve are present, the statute is silent as to the method of filling. The act of March 2, 1909, Acts 1909 p. 103, which applies to the filling of regular panels, makes no mention of struck or special juries. However, it is the rule that the court may call talesmen to fill a struck jury, and if a statute prescribes the manner in which such talesmen shall be called to fill a regular jury, that statute will govern the filling of

a special jury. *Barr* v. *City of Kansas* (1893), 121 Mo. 22; Thompson & Merriam, Juries §103; Proffatt, Jury Trials §73; 24 Cyc. 258. The sheriff could not legally have summoned the men objected to for jury service to fill a regular panel, under the act of March 2, 1909, *supra,* and it cannot be said that one asking for a special jury thereby forfeits his right to have his case tried by those men only, who are eligible to serve on a regular jury. The court was in error in overruling defendant's challenges to the three jurors for the reason that they were bystanders. It did not err

13. in overruling defendant's motion to set aside the panel, for such motions must be made before challenges for cause, and a party who challenges to the polls waives any right to afterward challenge the array. *Forsythe* v. *State* (1833), 6 Ohio 20; 24 Cyc. 311, 324, 330.

The error in overruling the challenges for cause will

14. not reverse the judgment, for such error is harmless if the complaining party has sufficient peremptory challenges unexhausted to remove the jurors to whom his challenges for cause have been overruled. It appears from the record in the case at bar that appellant had used none of its peremptory challenges. *Indianapolis St. R. Co.* v. *Bordenchecker* (1903), 33 Ind. App. 135, 144, 70 N. E. 995; *Terre Haute Electric Co.* v. *Watson* (1903), 33 Ind. App. 124, 70 N. E. 993; *Siberry* v. *State* (1897), 149 Ind. 684, 39 N. E. 636, 47 N. E. 458; *Shields* v. *State* (1897), 149 Ind. 395, 49 N. E. 351; 24 Cyc. 324, 326, 327. No reversible error having been made to appear, the judgment is affirmed.

NOTE.—Reported in 97 N. E. 176. See, also, under (1) 36 Cyc. 1571-1575; (3) 36 Cyc. 1605; (4) 29 Cyc. 530; (5, 6) 29 Cyc. 531; (7) 36 Cyc. 1565; (8) 36 Cyc. 1601; (9) 36 Cyc. 1638; (10) 38 Cyc. 1625; (11) 38 Cyc. 1816. As to the contributory negligence of children, see 1 Ann. Cas. 895; 17 Ann. Cas. 553; Ann. Cas. 1913B 969.