THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY v. CLOUD, ADMINISTRATRIX.

[No. 8,607. Filed November 5, 1915. Rehearing denied January 27, 1916. Transfer denied March 17, 1916.]

1. PLEADING.—*Amendment Pending Trial.—Discretion of Court.*— Under a rule of the circuit court forbidding the filing of amendments without affidavit showing sufficient cause for not filing same before the issues were closed, and providing for the suspension of such rule when in the court's opinion the ends of justice would thereby be promoted, the court's action in permitting the amendment of the complaint immediately before trial so as to allege that the decedent at the time of his death was a brick mason by trade, earning five dollars a day, was not an abuse of the court's discretion, in view of defendant's right to have asked a continuance if necessary to its defense. p. 260.

2. COURTS.—*Rules.—Construction.—Appeal.*—The rules of a trial court are construed to be the law of the court made for the orderly conduct of business and for the protection of litigants, and on appeal the construction placed by a trial court on its rules of practice will be adopted unless it clearly appears that there has been substantial error in their construction and application. p. 260.

3. RAILROADS.—*Crossing Accident.—Instructions.—Application to Pleading and Issues.*—In an action for the death of plaintiff's decedent in a crossing accident, grounded on the theory that defendant's fireman and engineer negligently failed to see decedent approaching the crossing, and also that, seeing him, they negligently failed to check the engine in time to avoid the accident, where defendant offered evidence on contributory negligence and the court gave instructions at defendant's request on that theory, other

Cleveland, etc., R. Co. *v.* Cloud—61 Ind. App. 256.

instructions given were unobjectionable and were applicable to the evidence and theory of the case, which in effect merely informed the jury that it was defendant's duty to keep a lookout for persons attempting to use the crossing, and that if decedent was in a position of danger or appeared to be, and if defendant's employes in charge of the engine as it approached the crossing knew the conditions, it immediately became their duty to use ordinary care to avoid a collision, and that if by the exercise of reasonable care they could have seen and known of decedent's peril and that he could not escape by the exercise of ordinary care, their failure to exercise such care would be negligence, regardless of whether some time before the collision they saw decedent in a place of safety, if by the exercise of reasonable care immediately thereafter and for some appreciable time before the collision they by the exercise of ordinary care discovered or could have discovered that from a place of safety decedent had actually entered a place of danger. p. 262.

4. RAILROADS.—*Crossing Accident.—Last Clear Chance.*—Where decedent was in a place where he had a right to be and was unable to remove himself, his negligence, if any, being antecedent, the defendant may be negligent under the last clear chance doctrine in not discovering his position of peril. p. 266.

5. APPEAL.—*Review.—Refusal of Instructions.*—A requested instruction containing an assumption not warranted by the evidence and also taking from the jury the question of contributory negligence, where under the facts such question was not one of law, was properly refused. p. 266.

6. DEATHS.—*Excessive Damages.*—A verdict of $6,000 for the death of plaintiff's decedent was not excessive, in view of evidence showing that decedent was twenty-one years of age, strong and industrious, had no bad habits, used all his earnings to support his wife and maintain his home, was a brick mason earning four to five dollars a day, that he had a life expectancy of forty years, and that he worked at his trade from eight to nine months each year and performed other labor during the remainder of each year. p. 267.

From Randolph Circuit Court; *James S. Engle,* Judge.

Action by Lena E. Cloud, administratrix of the estate of Charles Cloud, deceased, against The Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Frank L. Littleton, Macy, Nichols, Goodrich & Bales,* and *William F. Elliott,* for appellant.

*W. G. Parry,* for appellee.

IBACH, P. J.—Action for damages on account of the death of Charles Cloud, alleged to have been the result of appellant's negligence. The facts disclosed by the record are in the main concisely stated by appellee in her brief, and are substantially as follows: During the afternoon of December 12, 1911, Charles Cloud, the decedent, was driving north in a low buggy drawn by a pony, on Oak Street in the incorporated town of Lynn, Indiana. Oak Street was sixty feet in width and was crossed at right angles by five of appellant's tracks. The pony stopped frequently, probably balking, but would go forward when urged by Cloud. The pony finally stopped with its feet on the south track. It is about seventy-five or eighty feet from that point to the main track. An engine somewhere down the tracks began making a noise, blowing off steam. The pony became frightened, plunged, and became unmanageable, and ran toward the crossing, and it is admitted that Cloud did all he could to restrain and hold the pony. At this time, appellant's engine, running light, steam shut off, and moving at a speed of six to eight miles per hour, was approaching from the east, and the view from the eastward on the railroad track along Oak Street was unobstructed for some distance. At the crossing the engine collided with the buggy, Cloud still pulling back on the lines to check the pony. The collision occurred about eight feet west of the center of the street. The rig was struck between the front and hind wheels. No one seems to have seen the decedent after the collision until his mangled body was found about 100 feet west of the point where the rig was struck. There is some evidence tending to show that decedent was not killed or mortally wounded by the collision. Parts of the buggy were picked up on the west end of the crossing planks. The buggy tracks

showed that the west wheels passed west of the planks, and the east wheels on the planks. The engine stopped 80 to 100 feet west from where the body was found. Aside from the serious wounds that caused death there was only a scalp wound. The first blood was on the north rail 60 feet west of the street crossing and about 6 to 8 inches from the rail, and blood was scattered from that point west as far as the body. There was a pool of blood and one shoe near the body. The cinders between the rails were disturbed and appeared as though something had been dragged through them west from the first blood spot. Decedent's cap and buggy curtain were found at or west of the first blood spot, and pieces of flesh and bone 15 feet east of the body. His pocket-book and rule were 10 feet west of the blood spot. At or near the first blood spot were tracks and other marks indicating the place where the pony and what remained of the buggy were released from the engine. Witnesses near by at the time testified in substance that they saw the pony and part of the rig extending north from the engine as they were being carried down the track. The fireman who was standing on top of the tender, said he saw decedent when the pony was standing quietly and after that he looked straight ahead. He said he next saw the pony come around in front of the engine just after it came over the pilot. Just before seeing the pony, he heard the engineer apply the brakes, and felt the jar of it. The jar caused him to take two or three steps forward, and he then saw the pony. The engineer said he first saw the pony and rig "when they came over the pilot, the upper part of the pony was right back of the running board at the front cab window, the pony went to its kneees, rose and turned in again"; as soon as he saw the pony the brake was immediately put on, but the

engine had run 30 or 40 feet before the reverse lever was thrown.

The case was tried on two paragraphs of amended complaint to which a general denial was filed. A general verdict was returned in favor of appellee for $6,000, and with it the jury returned answers to interrogatories. These answers are in complete accord with the general verdict, so that in view of the state of the record and the errors relied upon, we refer only to a few of them particularly. The answers to interrogatories Nos. 8 to 15, inclusive, find the situation of the tracks, the approaching engine, the decedent in his buggy, and the collision just as those facts are stated in the complaint. In answer to interrogatory No. 17, which asked if decedent was killed or mortally wounded by the collision, the answer is no, and by the answer No. 19 it is found that the engineer might by ordinary diligence have stopped the engine after the collision in time to prevent Cloud's death. In answer to No. 21, it appears that the engineer did not see decedent until after the accident and the fireman did not see him until after his pony and broken buggy appeared on the north side of the main track; in answer to No. 24½ that decedent did not know that the pony would take fright at escaping steam; in answer to No. 23 and No. 24 that three seconds intervened between the time the pony started to run and the collision, and that the engineer could have stopped the engine in that time.

An amendment to the original complaint was permitted on the day of the trial, immediately before the case was called, over appellant's objection. It is first contended by appellant that this was error, for the reason that it was done in violation of rule 7 of the Randolph Circuit Court forbidding the filing of amendments without affidavit showing sufficient cause for

not filing the same before the issues were closed
The separate paragraphs of complaint were amended
so as to contain this clause, "that at the time of his
death the said Charles Cloud, was and for several
years prior thereto had been a brick mason by trade,
at which trade he worked, and at which he was earn-
ing and receiving, and had earned and received and
was capable of earning, $5 per day". At the time
appellant sought to have the foregoing rule enforced,
there was a further rule of the court, rule 21, which
provided that "the application of the foregoing
rules may be suspended when in the opinion of the
court the ends of justice would thereby be promoted
and all rights of the court in conflict with the above
rules are hereby reserved". Such rules have always
been construed to be the law of the court made for
the orderly conduct of business and for the protec-
tion of litigants, and they ought generally to be
upheld and enforced. It seems to have been the
realization of the court that in some instances the
enforcement of the rules would work an injustice,
and therefore rule 21 was promulgated, and the bill
of exceptions shows that the trial court thought he
was justified in his ruling by rule 21. Wherever
like questions have been presented, the courts
seem to have held that the construction placed on its
rules of practice will be adopted by the courts of
appeal unless it clearly appears that there has been
substantial error in their construction and applica-
tion. *Mix* v. *Chandler* (1867), 44 Ill. 174; *Morrison*
v. *Nevin* (1889), 130 Pa. St. 344, 18 Atl. 636; 11
Cyc 720. We find no error in the trial court's action
in permitting the amendments to the complaint on
the day of trial. Appellant might have asked a
continuance if necessary to its defense, but did not.

The first paragraph of the amended complaint
proceeds on the theory that appellant's fireman and

engineer failed to look for persons and vehicles
3. approaching the crossing and as a conse-
quence negligently failed to see decedent,
while it is charged in the second paragraph that they
did see him approaching and unmindful of him,
negligently failed to stop or check the engine in
time to avoid the accident. In short, it is appel-
lee's contention that appellant was negligent both
before and after the collision, and that if appellant's
servants had been looking ahead at either of these
times, they could have prevented killing decedent.
Of the instructions given on these theories, appellant
says Nos. 7 and 8 were erroneous. They are as fol-
lows: "7. If the jury find by the preponderance of
all the evidence in the case that the plaintiff's dece-
dent was riding and driving in a buggy drawn by a
pony hitched thereto, and so riding and driving
approached the crossing over Oak Street in the town
of Lynn, where the defendant company's line of
road crosses the same, and when within a distance of
about 75 feet, within a safe distance from said cross-
ing, the pony so driven stopped on the highway or
street before crossing over such railway tracks, and
while standing at such point, the said pony became
frightened at escaping steam or noise from the
defendant's locomotive near said crossing, or became
frightened and unmanageable from any cause, and
started forward toward said crossing, jumping,
rearing and plunging, and plaintiff's decedent was
unable to restrain and hold said pony, and that he
used diligence and his best endeavors and efforts
to restrain and stop said pony in its course towards
said crossing, and if you believe from the evidence
that plaintiff's decedent thereby and by reason of
the said conduct of said pony and his inability to
manage and control the same, if he were unable to
manage and control him, and the near approach of

the locomotive engine of defendant at that time to said crossing, if it were so approaching such crossing, and that thereby plaintiff's decedent was placed in a situation of imminent peril and danger, from which he was unable to extricate himself, and if the engineer in charge of the locomotive engine saw the plaintiff's decedent in his said perilous situation, if he were in a perilous situation from which he could not extricate himself, then it was the duty of such engineer to have used ordinary care and diligence to avoid coming in contact with said pony and said buggy, and said decedent and to avoid injury to him; or if, under the circumstances and facts above stated, by the exercise of ordinary care and diligence said engineer could have seen the plaintiff's decedent approaching said crossing, if he was so approaching the same, and could have seen and realized that the pony attached to and drawing said buggy in which plaintiff's decedent was riding and driving, was unmanageable, if said pony was so unmanageable, and that plaintiff's decedent was in peril from which he was unable to extricate himself, if such were the case, in time to have stopped his locomotive engine and avoid such contact and injury, by the exercise of ordinary diligence, if there was contact and injury, and the said engineer carelessly and negligently failed to look and to see the said deceased so approaching and failed, under the circumstances, to see plaintiff's decedent, and his perilous situation, if as before stated, he was in such perilous situation, such conduct on the part of such engineer in failing to see plaintiff's decedent and his said perilous situation, would be negligence on the part of such engineer in the discharge of his duties as such engineer toward plaintiff's decedent. 8. If the pony driven by plaintiff's decedent, became frightened and ran away with him and ran in front

of the defendant's locomotive engine as the same was passing over Oak Street in the town of Lynn, and the said pony and buggy was struck by said locomotive engine and carried and pushed along the railroad track in front of the locomotive engine by said contact a distance along said track, and if you believe from the evidence that plaintiff's decedent was unable to control said pony and he was carried on said track in said buggy and was thereby put in peril from which he was unable to extricate himself, and if after he was so put in peril, if he was in a perilous situation, the agents and servants of the defendant operating the said locomotive engine by the use of ordinary diligence, could have discovered plaintiff's decedent and his said perilous situation in time to have stopped said locomotive engine by the exercise of ordinary diligence and prevented it from passing over him and killing him, if it did so pass over him and kill him, and if said agents and servants of defendant negligently failed to discover the plaintiff's decedent and his said perilous situation and did not discover him and his said peril until after the said locomotive engine passed over the decedent, thereby causing his death, then in such case the negligence of plaintiff's decedent occurring prior to the time his pony became unmanageable and prior to his said perilous situation, if he was so negligent prior to said time, would not be a bar to to the plaintiff's right to recover, if she is otherwise entitled to recover in this action. The law is, that if a person is in a situation of peril and danger from which he is unable to extricate himself, it matters not whether he is negligent in placing himself in such situation of peril, if he is injured by the negligence of another, either by negligence of the omission of duty, or by negligent acts of commission, his

said prior act of negligence is not a bar to his right to recover, if he is otherwise entitled to recover.''

The claim is made by appellant that instruction No. 7 is "ambiguous and obscure because it leaves it an uncertainty whether the court intended to instruct the jury that it was the duty of the engineer to use diligence in watching the crossing over which his engine was about to pass, and that failure to use such diligence therein would be negligence if it resulted in injury to Cloud; or whether it was intended to charge that Cloud's peril was to be taken into consideration in determining what ordinary diligence required of the engineer, 'under the circumstances and facts above quoted' ''. We do not consider these objections tenable. Appellant had introduced evidence on the issue of contributory negligence and tendered instructions which were given by the court on that issue, and for this reason doubtless, instructions Nos. 7 and 8 were given. These instructions do no more than inform the jury that it was appellant's duty to keep a lookout for persons attempting to use the crossing, and that if Cloud was in a position of danger from which he could not remove himself before the collision, or appeared to be in a perilous position, and if appellant's employes in charge of the engine as it approached the crossing at the time knew the conditions as they existed with reference to decedent, then it immediately became their duty to use ordinary care to avoid a collision with him; or if they could by the exercise of reasonable care have seen and known of such position of peril and that he was so situated that he could not escape therefrom by the exercise of ordinary care, the failure on the part of such employes to exercise such care would be negligence, and it could make no difference if, some time before the collision, the fireman saw decedent

in a place of safety, if by the exercise of reasonable care immediately thereafter and for some appreciable time before the collision, such fireman by the exercise of ordinary care discovered or could have discovered that from a place of safety decedent had actually entered a place of danger. We are of the opinion that instruction No. 8 goes no further than instruction No. 7, and when both are carefully considered, it becomes quite clear that they were applicable to the theories upon which the case was tried, were within the evidence, and were not ambiguous or misleading; but on the contrary, stated with sufficient clearness a proposition of law which has long been settled. *Leavitt* v. *Terre Haute, etc., R. Co.* (1892), 5 Ind. App. 513, 31 N. E. 860, 32 N. E. 866; *Indiana Union Traction Co.* v. *Love* (1913), 180 Ind. 442, 99 N. E. 1005; *Union Pac. R. Co.* v. *Cappier* (1903), 66 Kan. 649, 72 Pac. 281, 69 L. R. A. 539, note; *Smith* v. *Norfolk, etc., R. Co.* (1894), 114 N. C. 728, 19 S. E. 863, 25 L. R. A. 287, note.

Appellant's contention that actual discovery is necessary to invoke the doctrine of last clear chance is not applicable to cases such as this where a

4. person is in a place where he has a right to be and is unable to remove himself, his negligence, if any, being antecedent, the defendant under such doctrine may be negligent in not discovering such position of peril. *Indianapolis Traction, etc., Co.* v. *Croly* (1913), 54 Ind. App. 566, 96 N. E. 973, 98 N. E. 1091; *Evansville, etc., Traction Co.* v. *Johnson* (1913), 54 Ind. App. 601, 97 N. E. 176.

Of the instructions refused, appellant discusses but one, No. 6. This instruction was properly refused. In the first place, it contains a

5. wrong assumption, that is, that decedent knew that the pony would take fright at escap-

ing steam. The evidence favorable to appellee on this point is that decedent did not know of such characteristic in the animal. The instruction, therefore, invaded the jury's province. It also takes from the jury the question of contributory negligence, and charges the jury as a matter of law, that certain facts, not sufficient, constituted contributory negligence. Appellant's brief throughout discloses that the errors on which it relies all hinge on the two main propositions that the decedent was negligent in attempting to drive his pony over the crossing under the circumstances, knowing that it would take fright at escaping steam, and that a short time before the accident he was seen by appellant's servants waiting in Oak Street south of the crossing, while they were approaching it, and at the time he was in a place of safety, but the evidence is to the contrary, and the jury definitely determines these two contentions against appellant.

The judgment in the case is for $6,000, and appellant contends this is excessive, and should be set aside. The evidence showed that at the time 6. of his death Cloud was twenty-one years of age, strong and industrious, had no bad habits, used all his earnings to support his wife and maintain his home, was a brick mason earning from $4 to $5 per day, and worked at this trade from eight to nine months in each year, performing other labor during the remainder of the year. His expectancy was forty years. In passing on such questions neither the court or jury can have a well defined or fixed rule to follow in order that a correct conclusion may be reached. The amount of the damages is very largely problematical, consequently a wide range of deviation is allowed the triers of the case and the amount of damages finally determined will not be disturbed, unless it appears that some

improper motive has prompted the jury in ascertaining such sum, or the amount is clearly out of all proportion to the injury sustained. Under the evidence, we see no reason to disturb 'the 'award in this case. Judgment affirmed.

NOTE.—Reported in 110 N. E. 81. As to application of rule of last clear chance to person so close to track as to be injured by passing train, see Ann. Cas. 1912 B 1242. As to frightened or unmanageable team as excuse for contributory negligence at railroad crossing, see 16 Ann. Cas. 954. See, also, under (1) 31 Cyc 398; (2) 11 Cyc 742; (3) 33 Cyc 1129, 1132; (4) 33 Cyc 1047; (5) 38 Cyc 1633, 1658; (6) 13 Cyc 378.