## Abraham B. Huston et al., Appellees, v. City Gas & Electric Company, Appellant.

1. CORPORATIONS—*powers of public service.* A public service company in the conduct of its business is empowered to make such reasonable rules and regulations as are required by good practice and as are consistent with the practical operation of its plant and to require compliance therewith by those dealing with it.

2. CORPORATIONS—*construction of franchise ordinance.* An ordinance granting a franchise or conferring privileges upon a public service corporation is to be given a reasonable nad practical construction.

3. CORPORATIONS—*powers of public service, supplying heat.* A corporation engaged in the business of supplying heat to buildings and apartments of various kinds has the right in connection with the proper and practical conduct of its business temporarily to disconnect its heating system from buildings or apartments to which it has been supplying heat.

Bill in equity. Appeal from the Circuit Court of Edgar county; the Hon. W. B. SCHOLFIELD, Judge, presiding. Heard in this court at the May term, 1910. Reversed and remanded. Opinion filed October 18, 1910.

JAMES W. & EDWARD C. CRAIG, W. H. CLINTON and S. I. HEADLEY, for appellant.

F. T. O'HAIR, F. W. DUNDAS and H. S. TANNER, for appellees.

MR. JUSTICE BAUME delivered the opinion of the court.

The complainants, Abraham B. Huston and thirty-six other residents of the city of Paris, filed their bill in equity in the Circuit Court of Edgar county against the defendant, City Gas and Electric Company, alleging that said defendant was engaged in the business of furnishing gas, electric light and hot water for the heating of dwellings, offices, storerooms and buildings in said city of Paris, which hot water was conveyed by pipes leading from the plant of said defendant through and under the streets and alleys in said city to the buildings and apartments to be heated; that each of the complainants installed in their respective buildings and apartments a sufficient number of feet of radiation with the necessary and sufficient pipes connected therewith to properly and comfortably heat said buildings and apartments when connected with the pipes and mains of the defendant; that on etc., and more than five years prior thereto, the complainants and each of them by and with the consent of the defendant and in pursuance of contracts in that behalf connected their said radiators and pipes with the mains and pipes of the defendant for the purpose aforesaid and that the defendant had by means thereof during the period from October 1 to May 1 of each year furnished and provided the complainants with sufficient heat to properly and comfortably and satis-

factorily heat their respective buildings and apartments; that on June 23, 1904, the city council of the city of Paris duly enacted an ordinance fixing the maximum charge to consumers for hot water heating at 17 cents per square foot per year, which amount the complainants and each of them had fully paid to the defendant. The bill further alleges on information and belief that the defendant threatens and intends, and will begin on October 1, 1909, to disconnect the pipes and radiators in complainants' buildings and apartments so that hot water will not be conveyed thereto unless the complainants and each of them enter into a contract in writing with the defendant whereby they would be bound to install in their said buildings and apartments a large amount of additional radiation, or pay to the defendant for such additional radiation at the rate of 17 cents per square foot per year whether such radiation was installed or not; that if the complainants are deprived of heat as threatened by the defendant it will materially depreciate the market and rental value of their buildings and apartments and will endanger the lives and health and comfort of the complainants and their families and cause great pecuniary loss to those of the complainants who are engaged in business and to those of said complainants who have rented their buildings and apartments to others for hire; that the defendant had already attempted to disconnect from its heating system the residence of the complainant, A. B. Huston, and would have so disconnected the same if it had not been prevented by the police officers of said city of Paris. The bill prays that the defendant may be restrained from disconnecting its pipes used in conveying hot water into the pipes and radiators of the complainants and from doing anything to said pipes that will prevent the hot water being so conveyed or from in any manner interfering with the pipes and radiators of the complainants. A demurrer to said bill was overruled

by the court and upon its motion the defendant was given leave to answer. After answer filed the defendant moved the court to dissolve the temporary injunction theretofore issued, which motion was denied, and the complainants having filed their general replication to the answer of the defendant, the cause was heard by the court on oral and documentary evidence and a decree entered in accordance with the prayer of the bill.

The evidence in the record discloses substantially the following state of facts: The corporate organization of the defendant was effected in July, 1904, and it thereafter succeeded to the business which had theretofore been conducted in the city of Paris by the Paris Gas, Light & Coke Co. and the receivers of said company and the purchasers of the property and franchises of said company at a receiver's sale. By an ordinance of the city of Paris passed June 23, 1904, the predecessors of the defendant were authorized and empowered to lay and maintain pipes in and across the streets, alleys and public grounds of said city for the purpose of carrying hot water for heating and domestic purposes to any building public or private, and to use and maintain the pipes theretofore laid for said purpose by the Paris Gas, Light & Coke Company upon the conditions among others that they, their successors or assigns, should furnish good service and that the maximum charge to consumers for hot water heating should not exceed 20 cents per square foot per year for less than 250 square feet of radiation, and 17 cents per square foot per year for more than 250 square feet of radiation. In almost every instance here involved the several hot water heating plants were installed during the operation of the system by the predecessors of the defendant and continued to be operated by the defendant presumably upon the terms and conditions which prevailed when the said plants were first installed. During the years

1908 and 1909 the defendant caused a complete survey of its hot water heating system and of the buildings and apartments connected therewith to be made by one Willliam Schott, an expert heating engineer, and predicated upon such surveys the defendant notified some of the complainants of the amount of square feet of radiation then installed in their buildings and apartments and the amount of square feet of radiation required to be installed therein by good practice, the amount of square feet of radiation then installed except in one instance being less than the amount required by good practice; and further notified said complainants that during the coming season it would furnish them heat for a sum stated, being at the rate of 17 cents per square foot per year for the amount of square feet of radiation required by good practice, and guaranteed a normal temperature of from 68° to 74° provided said complainants would install the additional amount of square feet of radiation required by good practice and bring their piping system up to defendant's specifications, and that in the event that said complainants did not care to go to the necessary expense of installing such additional radiation the defendant would furnish its regular service for the sum stated without any guarantee as to uniform temperature. There is evidence tending to show that the court was warranted in finding that the defendant threatened to disconnect the buildings and apartments of some of the complainants from its system of hot water heating unless said complainants would accede to the terms of the notice above mentioned, and that in September, 1909, the defendant excavated in front of the premises owned by the heirs at law of one Joshua Davis, for the purpose of disconnecting the heating plant in the dwelling house on said premises from its system. Abraham B. Huston and R. L. Scott, two of the complainants in the bill, are entire strangers to the controversy, being neither owners nor ten-

ants of the premises involved, and there is no evidence
in the record tending to show that H. H. Howell, F.
Fern Howell, H. S. Merkle, Samuel Sholem, O. S.
Jones, B. F. Cameron, I. Q. Huston, J. C. Risser, W. T.
Blackburn, W. H. Hoff, E. O. Laughlin, R. K. Shelledy,
George V. Dole and R. S. Lloyd named as complain-
ants in the bill have any interest whatever in the con-
troversy or will be in any manner aggrieved by the
alleged threatened conduct of the defendant. The de-
cree, therefore, in so far as it awards any relief by
injunction to said parties is wholly unwarranted.

While the bill alleges that the complainants installed
in their respective buildings and apartments a suffici-
ent number of feet of radiation with the necessary and
sufficient pipes connected therewith to properly and
comfortably heat their said buildings and apartments
when connected with the pipes of the defendant, there
is not a scintilla of evidence tending to show the terms
of the contracts, if any exist, between the complain-
ants and the defendant, relative to the heating of said
buildings and apartments. It does not necessarily fol-
low from the mere allegations of the bill together with
the proof offered on behalf of some of the complain-
ants that their buildings and apartments were com-
fortably heated, that the defendant had contracted with
said complainants to so heat their buildings and apart-
ments.

The defendant offered to show by expert heating
engineers that in estimating the amount of radiation
required to properly heat a room it was necessary to
consider the wall construction, whether of wood, brick
or stone; the number and size of the windows; whether
the room was on the north or south side of the house;
whether the house was exposed or protected; the
length of the pipe from the main plant to the place
where the connection is made for the room or house
in question; the ventilation of the room or house; that
beyond the necessary amount of hot water conveyed

to a radiator any excess does not provide additional heat but is wasted and deprives other patrons, who are located at a greater distance from the main plant, of hot water and pressure to which they are properly entitled for the purpose of heating their buildings and apartments; and that the radiators and pipes of several of the complainants were connected with the main pipe of the defendant by pipes having a greater diameter than was necessary to convey to the buildings and apartments of said complainants the quantity of hot water required by good practice to be conveyed to the radiators therein, thereby occasioning great loss to the defendant and substantially impairing its ability to properly heat the buildings and apartments of its other patrons. While the proof so offered by the defendant was incompetent to be considered in justification of the conduct of the defendant in requiring some of the complainants to increase the amount of square feet of radiation in their buildings and apartments and upon their failure so to do to charge said complainants the maximum price fixed by the ordinance of 17 cents per square foot per year for such additional radiation required, or as justifying the defendant in permanently disconnecting the buildings and apartments of said complainants from its heating system, it was competent to be considered by the court in determining whether or not the defendant might with propriety and in accordance with good practice in that respect temporarily disconnect said buildings and apartments from its heating system for the purpose of substituting other connections between said buildings and apartments and its system of heating so as to make such connections conform to its reasonable requirements. By the terms of the decree the defendant is restrained from disconnecting its heating system from the buildings and apartments of said

complainants even temporarily for any purpose whatever.

The ordinance under which the defendant is operating its system of heating must be given a reasonable and practical construction. While the defendant may not charge more than 17 cents per square foot per year for radiation in excess of 250 square feet there is nothing in the ordinance which requires it to heat a given surface through less radiation than good practice requires, nor to convey to such radiation a greater amount of hot water than is required by good practice or is consistent with the practical operation of its plant. The defendant although a public service corporation is entitled in the conduct of its business to make such reasonable rules and regulations as are required by good practice and as are consistent with the practical operation of its plant, and to require compliance therewith by those dealing with it.

The decree of the circuit court is reversed and the cause remanded for further proceedings not inconsistent with the views here expressed.

*Reversed and remanded.*