State ex rel. Otero de Burg v. Water Co., 19 N. M. 36

(No. 1595, April 28, 1914)

STATE OF NEW MEXICO on relation of Dolores Otero de Burg, Appellant, vs. WATER SUPPLY COMPANY, of Albuquerque, Appellee.

### SYLLABUS.

1. Public utility companies have a right to adopt and enforce reasonable rules and regulations, for their security and convenience and enforce compliance therewith by refusing or discontinuing the service; but such rules must be reasonable, just, lawful and not discriminatory.

P. 39

2. Where a contract is entered into between a city and a water supply company, for the benefit of the people of the city, and under which the people are entitled to certain rights, benefits and privileges, a construction of the meaning of ambiguous and doubtful provisions of the contract by one consumer or beneficiary is not binding upon other consumers, or beneficiaries, not shown to have acquiesced in or assented to such construction.

P. 40

3. Where a franchise granted to a water company provides that the company shall have the right "to make rules and regulations, to be approved by the city council," and the company contends that it has adopted and enforced a rule which required the consumer to pay the cost of making connection with its mains, before the question can arise as to whether the rule in question amounted to a construction of the contract by the city, it is incumbent upon the company to show that the city council gave its approval to the same.

P. 41

4. Where a franchise, under which a public utility company operates, imposes a burden upon the company, any rule or regulation adopted by the company, by which it attempts to shift the burden upon the consumer, is unreasonable and unjust, and will not be enforced.    P. 42

State ex rel. Otero de Burg v. Water Co., 19 N. M. 36

5. Where the meaning of a grant or contract regarding any public franchise is ambiguous or doubtful, it will be construed favorably to the rights of the public.

P. 45

6. Where a franchise, under which a water supply company operates, requires it to furnish water to private consumers at fixed rates, it must provide the necessary service pipe from the main line in an abutting street to the consumer's property line, at its own expense, unless the franchise imposes this burden upon the consumer.

P. 45

7. Where a municipality operates its own water supply system, it is not under contractual obligations to lay the service pipes from the curb to its main, hence a rule which requires the consumer to assume the burden is reasonable. But where, under a contract and franchise, this duty devolves upon the holder of the franchise, such a rule is unreasonable.

P. 51

Appeal from the District Court, Bernalillo County. Herbert F. Raynolds, Presiding Judge. Reversed with directions.

JOHN C. LEWIS, Attorney for Appellant.

General Rule. 1 Cook Corp. (6th Ed.) p. 8; 9. How. 172; 2 Bam. & Adol. 793; 201 U. S. 171; 15 N. M. 431; 106 C. C. A. 381; 108 C. C. A. 527; Clark on Corp. p. 125.

Cases in Point. 61 Pac. 518; 112 S. W. 816; 104 Pac. 670; 224 U. S. 148; 131 S. W. 680.

A. B. McMILLEN, Attorney for Appellee.

Rights of the City. 88 Pa. 393; 37 S. W. 525; 218 Ill. 40; 28 Pac. 516; 72 Am. Dec. 736; 12 Atl. 855; 38 Am. Dec. 672; 4 Wheaton, 668-672; 13 Wend. 331-338;

38          SUPREME COURT OF NEW MEXICO

State ex rel. Otero de Burg v. Water Co., 19 N. M. 36

9 Wheat. 907; 12 Wheat. 40; 1 Ld. Raym. 8; 2 Kent's Commentaries, 275; 61 Pac. 518; 92 Pac. 533; 104 Pac. 670; 2 Dillon on Municipal Corporations, p. 778; 3 Kent's Commentaries 433; 90 N. Y. 161; L. R. 4 Q. B. Div. 104; 70 N. Y. 361; 104 N. Y. 268; 107 N. Y. 42; 104 N. Y. 229; C. Ord. 1895, p. 63; C. Ord. 1905, Sec. 305, p. 152; C. Ord. 1911, Sec. 683.

Water mains are owned by water supply company and are laid for the purpose of furnishing water to consumers. Question of taking water from mains by connecting up service pipes is for consumer at his expense. L. R. 25 Ch. Div. 443; 67 W. Va. 285; 132 S. W. 288; 66 S. E. 835; 94 Pac. 1080; 79 N. W. 248; 61 N. M. 1030; 79 Ill. 337; 31 Ill. App. 118; 38 N. E. 1067; 93 N. W. 542; 90 App. Div. 397; 118 Ill. 329.; L. R. 25 Ch. Div. 443; 67 W. Va. 285; 61 N. W. 1030; 79 N. W. 249, 252; 28 N. E. 1067; 2 Wall 728, 737; 6 Wall 773; 7 Wall 229, 245; 9 Wall 50, 54; 11 Wall 566, 576; 122 U. S. 121, 131; 124 U. S. 505, 510; 147 U. S. 91, 99; 154 U. S. 51, 95; 164 U. S. 261, 270; 206 U. S. 206; 179 U. S. 415, 535; 95 U. S. 269, 273; 95 U. S. 273; 179 U. S. 435; 206 U. S. 222.

Franchise. 98 Md. 589; 110 La. 517; 142 Pa. St. 580; 61 Kan. 547, 558; 174 N. Y. 417; 107 Wis. 441, 446.

## OPINION OF THE COURT.

ROBERTS, C. J.—The material facts in this case are as follows: The relator is the owner of a lot abutting on North Thirteenth Street in the City of Albuquerque, New Mexico. The respondent is a public service corporation, owning and operating a water system in the City of Albuquerque, under a franchise granted it by the city council of said city, pursuant to a vote of the qualified electors, and, under a contract entered into between said city and respondent, as authorized and directed by said franchise. A main of respondent's water works system is laid along North Thirteenth Street in front of relator's lot.

The relator erected a dwelling on her said lot and equipped the same with all the fixtures necessary for water service and laid a pipe from said dwelling to the

property line of said lot at its junction with North Thirteenth Street; thereupon she made a demand upon respondent to connect its water main with the pipe laid by her to the property line of said lot. This respondent refused to do, unless relator would pay the expense of making such connection. Upon respondent's refusal, relator filed a petition for a writ of mandamus to compel it to make said connection. Upon issue joined, the cause was heard by the court, and the writ was denied, from which judgment relator appeals.

The sole question presented by this appeal is whether the property owner or the water company must defray the expense of laying the service pipe from the main to the property line and making the necessary connection with the main. The answer to the question necessarily depends upon the construction to be placed upon the franchise and contract under which the water company operates, for it is clear that the contracting parties might legally stipulate that this burden should be borne by the consumer, or, on the other hand, that the public service corporation should assume it. In its answer to the alternative writ the respondent alleged that it had, during the whole of its present franchise, adopted and enforced as one of its rules and regulations, and has, at all times required as a condition precedent to being supplied with water, that the consumer should lay his service pipes to the mains of respondent and pay the reasonable expense of connecting the same therewith; but, if the contract and franchise under which respondent operates, imposes this duty and expense upon it, it must be apparent that the rule in question would be unreasonable and void and without any vitality whatever. Public utility companies, it is true, have a right to adopt and enforce reasonable rules and regulations for their security and convenience, and enforce compliance therewith by refusing or discontinuing the service. But the rules must be reasonable, just, lawful, and not discriminatory. If they be not so, their enforcement will be enjoined. If a privately owned water company, organized for profit, in which the citizens of a municipality do not participate, undertakes

40      SUPREME COURT OF NEW MEXICO

State ex rel. Otero de Burg v. Water Co., 19 N. M. 36

and agrees with the city that it will, at its own expense, carry the water to the lot line of its consumers and there delivers the same, manifestly it cannot escape this burden by adopting a rule which would impose the expense upon the consumer. Such a rule would be unreasonable, unlawful and unjust and no consumer would be required to comply with it in order to secure the service.

Respondent contends, however, that all its consumers, numbering some twenty-five hundred or more, have complied with the rule and have construed the contract as imposing the burden upon the consumer. If such be the case, however, it would not affect the rights of the relator herein, because there is no showing that she has ever so construed the contract, or acquiesced in the rule.

**2** Where a contract is entered into between a city and a water company, for the benefit of the people of the city and under which the people are entitled to certain rights, benefits and privileges, a construction of the meaning of ambiguous and doubtful provisions of the contract by one customer or beneficiary would not be binding upon other consumers, or beneficiaries not shown to have acquiesced in or assented to such construction. And the fact that certain consumers have complied with, or failed to object to a rule of the water company, which was invalid and unenforceable, would not be binding upon other consumers or patrons.

It is further contended by respondent that the city and the company have placed a construction upon the contract, adverse to relator's contention, and, such being the case, the court should give effect to such interpretation of the provision in question. It is well settled that the construction given a contract by the parties interested, especially where it has covered a long period of years, will be controlling unless the contract is so plain against such construction that there could be no reasonable doubt upon the question. Lowber vs. Bangs, 2 Wall. 728; Cavaso vs. Trevino, 6 Wall. 773; Bronson vs. Rodes, 7 Wall. 229; Chicago vs. Sheldon, 9 Wall. 50; Insurance Co. vs. Dutcher, 95 U. S. 273; Fraser vs. State Savings Bank et al., 137 Pac. 592; 18 N. M. 340. But respondent has failed to point out

wherein the city has construed this provision of the contract, unless it be upon the assumption (a) that the water company has, at all times during the existence of the franchise enforced a rule which required the consumer to pay the cost of making the connection with respondent's water mains and laying the pipe from the curb to the main, as alleged in its answer, or (b) because the city itself has paid such expense, where it required water for city purposes.

It is sufficient answer to the first contention to state that neither the answer, nor the proof, show that the rule in question was approved by the city council. The franchise gives to the company the right "to make rules and regulations, to be approved by the city council." "A material fact, if not alleged, is presumed not to exist." 31 Cyc. 86. Before the question could arise as to whether **3** the rule in question amounted to a construction of the contract by the city, it would be incumbent upon respondent to show that the city council gave its approval to the same. The fact that the company had adopted and enforced such a rule, without the concurrence and acquiescence of the city council, would not be tantamount to a construction of the contract by the city. Had the proof supplied the defect in the answer in this regard, the omission would doubtless have been cured by the judgment; (31 Cyc. 763), but there was no proof whatever upon the question, as shown by the bill of exceptions, and such being the case, the omission in the answer would not be cured by the judgment. (Holmes vs. Preston, 70 Miss. 152; International Bank vs. Franklin County, 65 Mo. 105; 27 Am. Rep. 261). Until the rule or regulation was, in some manner brought before the council for consideration, it could not well be argued that mere inaction by the city would amount to an affirmative approval of the practice of the water company, or constitute a construction of the contract.

Nor is there any merit in the second proposition stated, because Section 9 of the franchise specifically provides that the city shall, at its own expense, erect all necessary stand pipes, or other appliances necessary for the draw-

ing off of water for city purposes, and, if it be true, as stated, that the city has in some thirty or more instances laid the pipe between the curb and the main and paid the expense of making the connection, it did so doubtless under the above provision, applicable only to the city; and any construction it might have placed upon this provision in the franchise or contract would not be binding upon consumers, claiming rights under other and different provisions of the franchise, if it be admitted, for the sake of argument only, that the consumer would, in any event, be bound by a construction placed upon the contract by the city.

The rights of the relator therefore, not having been prejudiced or influenced by the acts or conduct of either the city or other consumers, it becomes necessary to examine the franchise under which the respondent operates, and the contract existing between the city and the company in order to determine the reasonableness and justness of the rule and regulation under which respondent refuses to make the connection in question, unless first compensated therefor by the relator, for, as stated, if this burden rests upon the company, a rule or regulation by which it attempts to shift the same upon the relator would be unreasonable, and would afford respondent no justification for its refusal to make the desired connection with its mains. Section 1 of the franchise reads as follows:

"There is hereby given and granted to the Water Supply Company of Albuquerque, or its assigns, the right and privilege to supply the City of Albuquerque, and the citizens thereof with good water for domestic and manufacturing purposes, for the period of twenty-five years from and after the date of the approval of this franchise by the people, and no longer, subject to the terms and conditions herein set forth."

Section 2, after giving the company the right to erect, maintain and operate its plant, and to lay pipes, continues:

"And to extend aqueducts and pipes through any and

all of the streets, avenues, and alleys and across any bridge or stream in said city or grant."

Section 3, in part, reads as follows:

"The mains and distributing pipes * * * shall not be less than five-eighths of an inch in diameter, and as much larger as the necessities of the business requires, and made of the best quality," etc.

Section 5, after providing that the company must furnish a good and sufficient supply of water, continues:

"As the same may be needed and demanded for domestic and manufacturing purposes, so that it may be drawn off through the pipes connecting with the mains of said water works in all parts of said city where such pipes may be, at a minimum pressure," etc.

Section 7 begins:

"The water rate to customers during the continuance of this franchise shall not exceed the following monthly schedule rates."

This is followed by a specific enumeration of the monthly flat rate which may be charged consumers for water, and the section contains provisions for meter rates. No mention is made in this section, or in any other provision of the ordinance or contract as to the service pipes from the water main to the curb, except as above set forth. Pursuant to the franchise a contract was entered into between the city and the water company, by which the city agreed to pay a stipulated sum for fire hydrants, the number of which were stated, and by said contract, as a part of the consideration moving to the city, the company agreed to comply with all the provisions of the franchise granted it by the city and its inhabitants.

From the excerpts quoted above, from the franchise, it will be seen that no specific provisions were made. imposing the duty of laying service pipes between the main and the curb, and within the franchise limits, upon either the company or the consumer. On behalf of the respondent, it is argued, that by Section 5, above quoted, this duty is impliedly cast upon the consumer. While this section requires the company to furnish water, "as the same may be needed for domestic and manufacturing purposes,

44 . SUPREME COURT OF NEW MEXICO

State ex rel. Otero de Burg v. Water Co., 19 N. M. 36 ·

so that it may be drawn off through the pipes connecting with the mains of said water works in all parts of the city where such pipes may be," etc., it will be noted that no provision is made as to who shall lay the pipes within the franchise limits of respondent. All that can be said, from the wording of the franchise is, that it is silent on the question. But it does grant to the company the right to lay its pipes and mains "through any and all of the streets, avenues and alleys" in said city, in order to enable it to supply water to the city and its consumers. The right continues and exists during the whole term of the franchise, and no further permit or license is necessary. Such right exists only in the company. (Pond on Public Utilities, Sec. 537) and the consumer, without special permission from the municipal authorities, would have no right to tear up the street and lay pipes therein. Again, the franchise requires the company to restore the street to its former condition, after all excavations are made by it.

After all, the most that can be said, as to the terms and requirements of the franchise in this regard, is that it is silent on the question. This fact was found by the trial court, in its eighth finding of fact, which reads as follows:

"That there is no provision of respondent's franchise or contract with the City of Albuquerque requiring it at its own expense to lay service pipes for private consumers, or to connect the same up with its mains, without the consumer paying the reasonable expense thereof. There is no provision in respondent's franchise or contract with the City of Albuquerque requiring private consumers to lay service pipes from their lot lines to respondent's mains or to connect same with respondent's mains."

Such being true, the question naturally arises as to the proper construction of the franchise, for, by the terms of the contract the respondent undertook and agreed to perform all the conditions imposed upon it by the franchise. It would seem that the rule announced by the territorial court in the case of Telephone Co. vs. Field, 15 N. M. 431, is controlling. In that case the franchise granted the

telephone company authorized it to charge telephone rental rates not to exceed $36.00 per annum for one party residence. The company sought to enforce a rule, that on all contracts for less than one year's rental, a charge of $2.50 would be made for installation and a charge of $2.00 for removal of instruments. Its right to do so was denied. The court say:

"On the other hand, appellee cites Omaha Water Works Co. vs. Omaha, 147 Fed. 1, a case in the Circuit Court of Appeals for the Eighth Circuit, in which the court, after examining numerous cases, extracts from them the following rule, which we adopt, viz: 'Where the meaning of a grant or contract regarding any public franchise is ambiguous or doubtful, it will be construed favorably to the rights of the public. Where the grant or the contract is clear and plain, it will be protected and enforced.'

"It thus appears that the true rule is that both the grant and the contract, in case of ambiguity or doubt, are to be construed favorably to the rights of the public, and we so hold."

For further illustrations of the rule see the following cases: Knoxville Water Co. vs. Knoxville, 200 U. S. 22; Turnpike Co. vs. Illinois, 96 U. S. 63; Proprietors of Stourbridge Canal vs. Wheely et al., 2 Bam & Adol. 793; Penine vs. Chesapeake, etc. Co., 9 How. 172; 1 Cook on Corporations (6th Ed. 8.)

There is undoubtedly sound reasoning back of the authorities on this question. Public service corporations are allowed to charge the public a certain sum for service. This sum is the compensation for the expense of the corporation in installing and operating the plant for the convenience of the public and it is supposed to bear all the expenses which are not specifically charged against the public. If the legislature or the city council sees fit to provide that the property owner shall bear the expense of laying service pipes and making connections, then it is to be presumed that a lower rate will be fixed for service. If, as in the present case, no provision is made for laying service pipes and making connections, the rate

46    SUPREME COURT OF NEW MEXICO

State ex rel. Otero de Burg v. Water Co., 19 N. M. 36

allowed is presumed to be high enough to compensate the company for this expense.

Counsel for the appellee argues that, if the company was compelled to lay service pipes in the street, it could also be forced to lay them through the consumer's lot and into his house. The fallacy and unsoundness of this reasoning is apparent at a. glance. Everything within the franchise limit is under the control of the company unless otherwise expressly provided by statute or ordinance, and the franchise limit is definitely fixed at the line between the lot and the street or alley. The franchise cannot convey any right to or impose any duty upon the corporation outside the franchise limit. It is limited in its scope to the domain of the municipality and cannot invade the territory of private citizens.

Our conclusion, therefore, is, that, under the franchise, as thus construed, it was the duty of the water company to lay all necessary pipes, for supplying its customers with water, within the limits of its franchise, and this construction is fully supported by the adjudicated cases.

In the State of Idaho there is no statute imposing the duty of laying laterals and making connections in streets and alleys and the franchise granted by the City of Pocatello to the Pocatello Water Company was silent as to who should bear the expense of this work, so that the conditions are exactly the same as in the present case, and the Supreme Court of Idaho uses this language:

"Under the said franchise the respondent has been granted the right to lay its mains and pipes 'over, along, and under' the streets, alleys, and highways of said city for the purpose of supplying said city and its inhabitants with a sufficiency of pure water. It had the authority to lay all of the mains and pipes in said streets and alleys necessary to accomplish the purposes for which said franchise was granted. It is obliged to lay its mains and pipes in said streets and alleys, and deliver water to the consumers at its franchise limits, and to the line of the premises of the consumer, if such premises border on said franchise limits. The respondent has been granted a valuable right—that of laying its mains and laterals in the

JANUARY TERM, A. D. 1914 47

State ex rel. Otero de Burg v. Water Co., 19 N. M. 36

streets and alleys of the city—in consideration that it will furnish water to said city and its inhabitants. The company is under obligation to lay its pipes in the streets. and alleys so as to make the water accessible to the citizen for his private use. It is given the right, within its franchise limits, to lay all pipes and make all connections with its mains and laterals. Beyond those limits it has no authority to enter upon the private premises of a citizen and lay its pipes. Neither has the citizen any right to enter within the franchise limits of the company, and in any manner interfere with its mains and pipes." Pocatello Water Co. vs. Standley, 61 Pac. 518.

In the case of Bothwell vs. Consumers' Co., 24 L. R. A. (N. S.) 485, 13 Idaho, 568, 92 Pac. 533, the court say:

"The only further point to be considered in this case is whether the water company can require the consumer to pay for the tap and for making the connection with its main. It seems that this point ought to be disposed of without much difficulty. The franchise for laying pipes in the streets and alleys and maintaining and operating a water system is granted by the municipality to the water company. The property owner has no right or franchise to dig in the streets and alleys and lay pipes, and, if he should do so, he would acquire no property right therein. The main and all laterals, fixtures, and connections within the franchise limit, belong to the company, and altogether constitute the water system. It is not the business of the citizen or consumer to construct any part of the company's system, nor is it the company's business to place the pipes and fixtures on the consumer's premises. There is a clear and well-defined boundary line existing between the property of the water company and the property of the lot owner—that line is the one existing between the lot and the street or alley. The citizen owns his pipes and fixtures to that line, and beyond it is the company's property and water system. The rights, duties, and obligations of each go to this extent, and no further."

In Texas at the time the case was decided the same conditions existed as regards the City of El Paso, but in this case the franchise contained the provision that the

48        SUPREME COURT OF NEW MEXICO

State ex rel. Otero de Burg v. Water Co., 19 N. M. 36

company should furnish water to "consumers having pipe connections" at a specified rate. The civil court of appeals held that, primarily the duty of a company bound to furnish water to property owners on streets containing mains carried with it the duty to perform the work necessary to enable the company to furnish the owners with water, and the company could only be relieved from the obligation to construct, at its own cost, the necessary connections by some provision in the franchise or contract which unmistakably, or by fair implication, so operated. International Water Co. vs. City of El Paso, 112 S. W. 816.

The Supreme Court of Idaho a second time handed down a decision upon the subject upon a statement of facts on all fours with the present case. The court say:

"Under the franchise granted by the City of Coeur d'Alene to the Consumers' Company to occupy the streets and alleys of the city for the purpose of supplying the city and inhabitants thereof with fresh water, the right and authority to dig in the streets and alleys and lay pipes therein for supplying consumers with water is conferred upon the company alone, and no such right is conferred upon the individual or consumer, and the consumer acquires no right to lay pipes or acquire property in the streets and alleys, but, on the contrary, the duty to do so and the rights acquired thereby belong to the water company. It is consequently the duty of the water company to supply and lay the laterals from its main to the line of a consumer's property abutting on such street, and such laterals are the property of the water company."

"A public service corporation organized for the purpose of supplying the inhabitants of a municipality with water is not justified in assuming that the people it is to serve are dishonest, and that they will demand and pay for a month's water supply merely for the purpose of entailing upon the company the expense of putting in laterals and service connections, and that they will thereafter refuse to take water and thereby discommode themselves and depreciate their own property, and the courts will not base decisions upon such an assumption." Hatch

vs. Consumers' Co., 104 Pac. 670.

Appellee attempts to meet this decision with the statement that property owners had the right to dig into the streets and alleys upon complying with certain regulations. This is undoubtedly true, as it is true in all cities of the country, but the point in the reasoning in the Hatch case is that the property owner has no right under the franchise to dig in the streets and alleys and lay pipes, but must get a special permit for which a fee is charged, while the water company is granted general permission under the franchise. The court in this case also answers the argument of appellee that dishonest consumers might pay water rent for one month and thereafter discontinue use of the water, inflicting a loss upon the company.

In the Supreme Court of Arkansas, in 1910, this question was raised upon a franchise, the terms of which were almost identical with those of the present appellee. The court say:

"Is it the duty of appellant to construct and maintain the service pipes at its own expense, free of charge?

"By Section 1 of its contract it assumed the duty of supplying the city and the inhabitants thereof with water and acquired the right 'to use the streets, alleys, sidewalks, and public grounds of the City of Pine Bluff, within its present and future corporate limits, for placing and taking up and repairing mains, hydrants and other structures and devices requisite for the service of water.' The duty to furnish the city and inhabitants with water carried with it the duty to do and perform what was necessary to be done to place the company in a position where it could furnish the water. To do that, the contract, Section 1, expressly authorizes it 'to use the streets, alleys, sidewalks * * * of the City of Pine Bluff * * * for placing and taking up and repairing mains, hydrants and other structures and devices requisite for the service of water, that is to say, the delivery of water to the inhabitants or city. The duty is assumed, and the power is given, by the contract to perform it. The property owner, the inhabitant, or consumer has no right to lay the service pipes in the streets and connect them with the water company's

mains, but this power is expressly given to the water company, in connection with the duty it assumes, and to no one else, which implies that it shall lay the service pipes, at its own expense, for all of which the consumer is required to pay for the water furnished at certain rates specified in the contract. If it was not the intention of the contract that the water company should lay the service pipes, why did the city council give it the power to do so, and withhold it from the inhabitant? It evidently intended that the water company should do so, free of charge, because it fixes the compensation to be paid by the consumer for services rendered him, and says nothing about compensation for service pipes. How was it to render the services it undertakes without laying the service pipes, and where is the authority to collect from the consumer more than he is required by the contract to pay? There is none. Pocatello Water Company vs. Standley, 7 Idaho 155; 61 Pac. 518; International Water Company vs. City of El Paso (Tex. Civ. App.), 112 S. W. 820; Bothwell vs. Consumers' Company, 13 Idaho 568, 92 Pac. 533. 24 L. R. A. (N. S.) 487," Pine Bluff Corporation vs. Taney, 131 S. W. 680.

In the case of Bothwell vs. Consumers' Company, 13 Idaho, 568, 24 L. R. A. (N. S.) 485, the syllabus by the court is as follows:

"All the mains and laterals of a water system within the franchise limit belong to the company owning the franchise, and it is the duty of the company to construct the same at its own expense, and connect with the pipes of the property owner at the line of his property and the limit of its franchise.

"Where a lot owner constructs a building on his property, and places water pipes and fixtures therein, and extends the same to the street adjoining, and thereupon tenders to the water company the monthly rent charged by it, it becomes the duty of the company to make the necessary tap and connections, and furnish the property owner with water as demanded."

In the case of Hatch vs. Consumers' Co., *supra,* the court further say:

"We are aware that some courts have held that the consumer may be required to pay the expenses of 'service connections,' as it is sometimes called, or, rather for laterals extending from the curb line to the main. So far as we have been able to examine, however, these decisions are based upon express statutes."

The Supreme Court of Washington, in a recent decision (Cleveland vs. Malden Water Works Co., 125 Pac. 769), followed the rule announced in the foregoing cases. The court say:

"But this case is controlled by the franchise ordinance, which requires the company to furnish water to users and consumers at certain fixed rates; and we are of opinion that it is not so furnished, within the meaning of the ordinance, unless it is delivered to the consumer at his property line."

Respondent has cited some cases to the contrary, but we think the great weight of authority is in accord with the view we have expressed. McQuillin, in his work on Municipal Corporations, Sec. 1696, in discussing the question, says:

"While it has been held in some cases that the consumer may be required to pay the expense of laterals extending from the curb line to the main, these decisions are for the most part based upon express statutes, and where there is no such statute it is generally held that it is the duty of the company, at its own expense, to supply and lay the laterals from its main to the line of a consumer's property abutting on the street." See also Pond on Public Utilities, Secs. 536 and 537.

A great many of the cases cited by respondent, are cases where the water works were owned and operated by the municipality, and it had adopted a rule which required the consumer to bear the expense of laying the service pipe from the main to the property line. These cases are not in point. Where the city owns and operates the utility no contractual rights exist in favor of the consumer. The city has the right to adopt and enforce reasonable rules and regulations, as likewise has a privately owned company. But a rule which is reasonable

and enforceable under a municipally owned utility may not be where it is owned by private parties. In the former case, whatever profit arises from the venture, inures to the benefit of the citizens generally, while in the latter it finds its way into the pockets of its stockholders. Again, the rights of the privately owned company are measured by its contract with the city; and, where, under such contract it assumes certain obligations, it cannot escape compliance therewith by any rule which it may adopt. Where a municipality operates its own water supply system, it is not under contractual obligations to lay the service pipes for its customers from the curb to its water main, hence, a rule which requires the consumer to assume the burden is reasonable and just. On the other hand, here we have a corporation which, under the rule of construction which must be applied, assumed the burden of so doing, consequently the rule adopted by it, is unreasonable and unjust.

Appellee contends, however, that such a construction will result in bankruptcy and ruin to it, and all other privately owned companies doing business in New Mexico, because, customers living in the suburbs and remote and thinly populated portions of the city will compel it to conduct water to their property line. If the argument were proper, and entitled to consideration by the court, a sufficient answer would be that no such result will be attained, for, under its franchise it cannot be compelled to extend its mains, by order of the city or otherwise, "unless the gross income from such extension, exclusive of hydrant rentals (by the city) shall equal six per cent of the cost thereof." Such being the case, and the company, before it can be required to extend its mains, always being insured of six per cent gross income upon the cost of the extension, will be in no danger of becoming impoverished.

For the reasons stated ,the cause will be reversed, with directions to the district court to grant the relief prayed for by the relator, and it is so ordered.