## OKLAHOMA NATURAL GAS CO. v. YOUNG.

### No. 2166.

Circuit Court of Appeals, Tenth Circuit.

Dec. 26, 1940.

Paul Pinson, of Tulsa, Okl. (Underwood, Canterbury, Pinson & Lupardus, of Tulsa, Okl., on the brief), for appellant.

B. A. Hamilton, of Tulsa, Okl. (Don Walker and Don Lewis, both of Sapulpa, Okl., on the brief), for appellee.

Before BRATTON and MURRAH, Circuit Judges, and SYMES, District Judge.

SYMES, District Judge.

In this action, instituted in the state court of Oklahoma and removed to the United States District Court for the Northern District of Oklahoma, plaintiff sued the defendant, a public utility supplying natural gas to residents of Tulsa, Oklahoma, alleging that the latter, with knowledge that the appellee was sick and confined to her bed under the care of a doctor and nurse, turned the gas off during cold weather; that plaintiff had no other means of heating the house in which she was living; and that defendant's action in turning the gas off resulted in pneumonia and serious harm to her. Furthermore, that this action was taken notwithstanding the pleadings and admonitions of plaintiff and her nurse, and with the knowledge on the part of defendant that her son, who customarily paid the gas bill for the residence where she lived, would soon pay the bill. It is charged that such acts of the defendant were wilfull and malicious, inhuman, and constituted a gross abuse of its right to discontinue gas service for non-payment of its account.

The defendant admitted it was furnishing gas at the address where plaintiff lived—309 West Fairview Avenue, Tulsa, Oklahoma—and that it cut the gas off on the day in question because of the delinquency in the payment of the account. It alleged that the gas was furnished at the address referred to under a contract with one Lena Lamb; that plaintiff's name was in no wise connected with said contract; that the account had been repeatedly delinqent prior to the date in question, December 28, 1936, and on December 1st the bill being delinquent, by special contract service was continued until the 22nd, on which date the bill not having been paid, the gas was cut off. Service was restored on an oral guarantee by a third party named Ziegler that the bill would be paid by the 24th. The bill was not so paid by Ziegler and service was discontinued on the 28th, and restored on the 29th.

Defendant further alleges that if the plaintiff was injured she was guilty of negligence proximately contributing to her own injury, by reason of her failure to keep herself warm by some means other than by gas.

The court below found the facts to be that on the 28th of December plaintiff was confined to her bed by reason of injuries previously received in an automobile accident and was then under the care of a practical nurse; that the defendant was serving the house where plaintiff was living with gas for heating, and was advised by the plaintiff and her nurse of her condition, and through its agents and servants knew that to turn the gas off—which was the only means the plaintiff had for heat or warmth in the house—would cause the plaintiff serious harm, the weather at the time being damp and cold; that the act of defendant, through its agents and servants in cutting off the gas was within the course of their employment, and directly and proximately caused plaintiff to suffer sickness and pain and resulted in a serious and permanent bronchial condition, precipitated and directly brought about by defendant's act in cutting off the gas supply to the house of one of its customers in which the plaintiff was living.

On these facts the lower court—a jury having been waived—found as a matter of law that the defendant was guilty of abuse of any right it may have had to discontinue service of gas to the house in which plaintiff lived; the defendant's act being inhuman to the extent that defendant was guilty of actionable wrong, and gave a judgment for the plaintiff, from which judgment defendant appeals.

The evidence establishes that on December 1st, 1936, $11.50 was past due and delinquent. The meter had been read on November 13th for that bill, then from November 13th to December 13th there was an additional amount of gas consumed of $12.39, and from December 13th to the 28th, to the date service was discontinued, an additional amount of $5.97, or a total amount served up to the time the gas was shut off of $29.86, which left a considerable deficiency even after the $15 deposit was applied against this debt.

It seemed the plaintiff had formerly lived at another address where the gas account was in the name of her son; that when they moved to the West Fairview address the new account was put in the name of her daughter-in-law, Lena Lamb. There was $18.08 due on the bill at the old address, which wiped out a $15 deposit. Testimony for the defendant indicated they watched the new West Fairview account very carefully, because the plaintiff had left the unpaid debt of $18.08 at the old address.

Appellee, at the outset of its argument, concedes the appellant's right to discontinue the service of gas, nor does she claim any contract relation with defendant, but argues that the manner in which such right was exercised in this case in view of the evidence, constituted an abuse of any right which may have existed to discontinue gas service to the house in which the appellee lived, and that the appellant's act in discontinuing the service was inhuman to the extent of constituting actionable wrong.

Conceding arguendo the facts to be as contended for by the plaintiff, let us examine this statement. The plaintiff herself testified that on one occasion—the day she was injured in the automobile accident—she had gone to town to pay the bills and was going to stop at the gas office to pay the gas bill, and when she got home she told the family the bill was not paid and turned the money over to the rest of them for that purpose.

"I just told them [the money] was in my purse and expected them to take charge of it."

George Kile, an employee of the defendant, testified the gas had been turned off in April, 1936, because of a delinquent bill; the same happened again on May 14th, May 20th, July 11th, July 13th and December 1, 1936—in fact that since April they did not miss a month in which the collector had not cut, or threatened to cut, the gas off in order to collect the bill.

The son, Ab Young, testified when asked if he had been paying his mother's gas bills himself, said he had not, but "I had been sending every two weeks. I sent a check for expenses, and to my knowledge I don't know exactly what she used it for."

That only on one occasion had he made a check directly payable to the gas company.

The respective rights and duties between a public utility, such as a gas company, and its consumers, is set forth in 28 C.J. p. 565, beginning at Sec. 26. The following extracts therefrom are supported by the authorities there cited.

"A gas company may, in the discharge of its duties to the consumer, govern its action by reasonable rules and regulations, * * * This is an inherent power implied from the nature of the business, limited only by the charter, or by express statute or ordinance."

"Public utility companies have a right to adopt and enforce reasonable rules and regulations for their security and convenience and enforce compliance therewith by refusing or discontinuing the service; but such rules must be reasonable, just, lawful, and not discriminatory." State ex rel. De-Burg v. Water Supply Company of Albuquerque, 19 N.M. 36, 140 P. 1059, L.R.A. 1915A, 246, Ann.Cas.1916E, 1290.

See, also, State ex rel. Latshaw v. Board of Water & Light Commissioners of Duluth, 105 Minn. 472, 117 N.W. 827, 127 Am. St.Rep. 581; Huston v. City Gas & Electric Company, 158 Ill.App. 307, at page 314.

"A municipality or corporation furnishing * * * gas may, by ordinance or by-laws, make reasonable rules and regulations to insure the payment of bills—among others, that of stopping the supply unless all arrearages are paid, whether owing by the tenant in possession or his predecessors." Miller v. Wilkes-Barre Gas Co., 206 Pa. 254, 55 A. 974, 975.

The general rule is that a public service company furnishing gas may require the charges to be paid for a reasonable time in advance or be secured by a reasonable deposit by the consumer. Cedar Rapids Gas Light Co. v. Cedar Rapids, 144 Iowa 426, 120 N.W. 966, 48 L.R.A.,N.S., 1025, 138 Am.St.Rep. 299. And may enforce such a requirement by the refusal of

service to persons who do not comply. Pollits v. Consolidated Gas Co., 118 App. Div. 92, 102 N.Y.S. 1017.

■ And 28 C.J. 567, Sec. 29. It is the general rule, both under statute, and apart from statute, a gas company may refuse the consumer a further supply of gas for failure to pay arrearages for gas consumed, and this may be done although the consumer is solvent, or the deposit provided for has not been used up by charges for gas.

"There is no warrant in the statute for the proposition that the company is prohibited from cutting off the supply of gas until the amount of the deposit has been used up by charges for gas supplied." Hewsey v. Queens Borough Gas & Electric Co., 47 Misc. 375, 93 N.Y.S. 1114, at page 1115.

■ To maintain an action in tort for defendant gas company's refusal to continue to supply gas to her as a consumer, plaintiff must allege facts which made it a breach of duty on its part to discontinue the service after refusal to pay the overdue account.

"To maintain an action in tort for refusal of a gas company to continue a supply to a customer, facts must be alleged which made it a breach of duty on its part to discontinue the consumer's supply." Birmingham Railway, Light & Power Co. v. Pratt, 187 Ala. 511, 65 So. 533, L.R.A. 1915A, p. 1208.

"* * * a public utility has the right to prescribe and adopt rules and regulations for the conduct of its business and the protection of itself against fraud, injury or undue risk and liability, and to require compliance therewith by those dealing with it, provided such regulations are reasonable, just and not in contravention of law." 51 C.J. p. 7, Sec. 14.

See, also, State ex rel. De Burg v. Water Supply Co. of Albuquerque, N. M., supra, and 28 C.J. p. 569, Sec. 32.

■ It follows as a matter of law the plaintiff, not having complied with the reasonable and legal demand of the appellant for the payment of the overdue account at the time the gas was turned off, was in no position to demand that service be continued. See Pollits v. Consolidated Gas Co. of New York, supra. We fail to see wherein the appellant failed in any duty it owed the plaintiff.

In support of the humanitarian rule urged by appellee, and which the court below evidently had in mind in its conclusion of law, it cites Depue v. Flateau, 100 Minn. 299, 111 N.W. 1, 8 L.R.A.,N.S., 485. The facts in that case were as follows: Plaintiff, a cattle buyer, went to the farm of the defendant on a cold winter evening to buy cattle. But on account of the darkness, he was unable to inspect the cattle until daylight. He asked to remain, which was refused. He was invited to supper, however, and bought some furs. He was then taken violently ill, and again asked permission to remain, which was refused. He was helped into his cutter, but on his way home again became ill and lost consciousness, and because of exposure suffered impairment of health and other injuries. It was held that the plaintiff was not a trespasser on the premises of the defendant, and therefore defendant owed him the duty, upon discovering his physical condition, to exercise reasonable care in his conduct not to expose him to danger by sending him away from his house, and it was for the jury to say whether, considering the defendant's means of looking after the plaintiff or of communicating with friends, he neglected any duty which he owed him. The following quotation from the opinion in the case answers the appellee's contention, the court (111 N.W. 2), quoting from Union Pacific Ry. Co. v. Cappier, 66 Kan. 649, 72 P. 281, 69 L.R.A. 513, said: " 'Those duties which are dictated merely by good morals or by humane considerations are not within the domain of the law. Feelings of kindness and sympathy may move the Good Samaritan to minister to the sick and wounded at the roadside, but the law imposes no such obligation; and suffering humanity has no legal complaint against those who pass by on the other side. * * * Unless a relation exists between the sick, helpless, or injured and those who witness their distress, of a nature to require and impose upon them the duty of providing the necessary relief, there is neither legal obligation to minister on the one hand, nor cause for legal complaint on the other.' "

■ In view of these rules of law we fail to see where the defendant failed in any duty it owed the plaintiff. In fact the history of this account as set forth above would justify the action of the appellant in refusing any further credit, showing, as it does, that the money the plaintiff had for the purpose of paying the bill had been diverted to other uses by

members of her family when the accident occurred. We are unable to find, and are cited to no authorities, imposing a duty upon the appellant to furnish gas to the plaintiff merely because she had had an accident. We must especially bear in mind it is the duty of a utility company to exercise its franchise to serve individuals who desire to be served without discrimination between them. Cloverdale Homes v. Cloverdale, 182 Ala. 419, 62 So. 712, 47 L.R.A.,N.S., 607, and, "A utility may refuse or discontinue service to one who does not conform to its reasonable rules and regulations." 51 C.J. p. 7, Sec. 14C. And has the right to protect itself against fraud, injury or undue risk and liability, and to make rules for that purpose and to require compliance therewith by those dealing with it. Huston v. City Gas, etc., Co., 158 Ill. App. 307.

With full notice that the supply of gas would be cut off, and with notice of the surrounding circumstances and the weather conditions, the plaintiff and members of her family were under as much a duty as the appellant was to anticipate the results complained of and guard against them. Clearly they might have been avoided by the exercise of ordinary care on her part and that of members of her family, with whom she was residing.

 The only basis upon which liability can be imposed is omission or negligent discharge of some legal duty which brings the case within the sphere of judicial cognizance. The penalties for withholding relief from the suffering or for failure to respond to the call of worthy charity are not to be found in the laws of men, but only in that higher law, the violation of which is condemned by the voice of conscience.

· It is true that in Coy v. Indianapolis Gas Co., 146 Ind. 655, 46 N.E. 17, 36 L.R.A. 535, the public utility, a natural gas company, was held liable for failure to supply the needed fuel in severe winter weather to a dwelling house which it was under a duty to, and had, contracted to supply gas, and for which other fuel could not be procured. The matter was before the Indiana State Supreme Court on demurrer to the complaint, which admitted the allegation that the refusal of the gas company to discharge its duty to appellant directly contributed to the sickness and death of the plaintiff's children, and recovery was allowed. The decision was based upon the general duty of public utilities to supply their services to consumers, and there was no allegation of any failure on the part of the customer to carry out his part of the contract.

Fort Smith Gas Co. v. Cloud, 8 Cir., 75 F.2d 413, 97 A.L.R. 833, cited by appellee, is the nearest case on the facts to the one at bar. Plaintiff rented a house and made a contract with the defendant gas company for natural gas for heating, made the required deposit, and in reliance upon the defendant's statement the gas would be immediately turned on, moved his family into the house. The gas was not turned on until about 4 o'clock in the afternoon, instead of 11 A. M. as had been promised. In the meantime his wife and children went to a neighboring house where they were comfortable, but the plaintiff remained in and about the unheated house, except for the times he went to make telephone calls, until the heat was turned on. Following the installation of the meter and the turning on of the gas, the plaintiff and his family arranged the furniture, and sometime that night he took a chill. He did not remain in bed the next day but worked at his usual occupation and did not call a doctor for several days. A judgment in favor of the plaintiff in the lower court was reversed, the court saying, 75 F.2d page 415: "Even if it could be said there was unreasonable delay in installing this meter, such delay was not the proximate cause of plaintiff's injuries, and to constitute actionable negligence the injury must have been the natural and probable consequence of the alleged negligent act. The consequence of the negligent act must be within the range of probability as viewed by the ordinary man, and consequences which are merely possible cannot be regarded as either probable or natural. * * * One is bound to anticipate only the reasonable and natural consequences of his conduct. Defendant could not reasonably have anticipated that plaintiff, a man of mature years would remain exposed, idle, and inactive, in this unheated house in zero weather for some seven hours. As has already been observed, it was wholly unnecessary that he do so. No one is required to guard against that which a reasonably prudent person, under the circumstances, would not anticipate as likely to happen. * * * The proximate cause of plaintiff's injuries, so far as they arose from his exposure in this unheated house, was the voluntary and entirely unnecessary act of plaintiff, an

intelligent and responsible human being, and not the act of defendant in delaying in installing the gas meter."

By the same reasoning it could hardly be anticipated plaintiff would remain in the cold house after the gas had been cut off, without taking necessary steps to guard against the results thereof. The results of defendant's acts complained of were only a possibility and not at all probable.

The judgment is reversed and the case remanded, with instructions to dismiss.